## KUTCHER v. POST PRINTING CO., ET AL.

(No. 796; Decided April 12th, 1915; 147 Pac. 517.)
(Rehearing Denied June 29th, 1915.)

Libel and Slander—Sufficiency of Petition—Pleadings—Admissions by Demurrer—Construction of Published Matter—Defamation of Character—Liberty of the Press—Officers—Newspapers.

1. Where published matter alleged to be libelous was addressed to plaintiff, as Mayor of a city, with reference to his official conduct, plainly showing on its face, that it was published of and concerning plaintiff in his official character, no express averment that it was so published is necessary, and when the language used is libelous *per se* an allegation of special damages is not necessary.

2. For the purpose of determining questions presented by a demurrer to a pleading all matters well pleaded therein must be taken as admitted.

3. Any language, whether spoken or written, imputing want of integrity, a lack of due qualification, or a dereliction of duty to an officer or employee is actionable *per se*.

4. Where the sufficiency of a petition to state a cause of action for libel is questioned by a demurrer, it is for the court to determine whether or not a libel is set forth, and if the words alleged to be libelous, when considered according to their ordinary meaning and as they would be understood by those who read them in their connection with the subject matter of the entire article, are fairly susceptible of a construction rendering them actionable, the pleading should be upheld and the question submitted to the jury.

5. Matter published in a newspaper article under sensational headlines in the form of interrogatories propounded to plaintiff, who was the Mayor of a city, and containing insinuations calculated to create in the public mind a belief that plaintiff was guilty of misconduct in office, as would naturally bring him into disrepute and degrade him in the estimation of the people, may be fairly susceptible of a construction rendering it libelous.

6. In ruling upon a demurrer to a petition in an action for libel, which alleges a malicious publication of false statements, insinuating misconduct on the part of an official, matters well pleaded will be taken as admitted for the purpose of the demurrer; the constitutional provision

that the truth, when published with good intent and for justifiable ends, shall be a sufficient defense in all trials for libel is inapplicable in such case, since it is truth, when so published, and not falsehood, that is privileged.

7. Liberty of the press does not permit a newspaper under the guise of criticizing official acts to maliciously defame the character of a public officer, and a newspaper maliciously and falsely publishing statements with respect to the official conduct of an officer is guilty of libel and may not rely on the ground of privilege.

ON PETITION FOR REHEARING.

8. An averment that an article was published maliciously is sufficient to admit evidence of express malice, if proof of that fact upon issue joined is necessary.

9. The conditional privilege of criticising a public officer is founded on public policy and applies only where the false statement was made in good faith and without malice.

ERROR to the District Court of Sheridan County; HON. CARROLL H. PARMELEE, Judge.

Action for libel. From an order sustaining a demurrer to the petition and a judgment of dismissal, plaintiff brings error.

*Enterline & La Fleiche* and *J. H. Burgess,* for plaintiff in error.

The published matter was libelous within the definition of that term. (25 Cyc. 361; Spencer v. Minnick, 139 Pac. 130; 25 Cyc. 346.) A false imputation to a public officer of malfeasance or misconduct in office is libelous *per se.* (25 Cyc. 403.) The allegations of the petition and the correctness of the innuendoes are admitted by the demurrer. (25 Cyc. 469; Belknap v. Ball, 47 N. W. 674.) Hence, a malicious publication of false statements accusing plaintiff of misconduct and corruption in office, as alleged in the petition, being admitted, a cause of action is stated. (*In re* McDonald, 4 Wyo. 150.) The State Constitution, while according every freedom to the press consistent with public welfare, restricts that freedom to the publication of the truth with good intentions and for justifiable ends. (Constitution, Sec.

20, Art. 1.)   See also Wertz v. Sprecher, 118 N. W. 1071, a Nebraska case, where a similar constitutional provision was invoked on the ground that the publication was true, and wherein it was held that the truth alone is not a complete defense, but that the defendant must further allege and prove, that he published the alleged defamatory matter with good motives and for justifiable ends.  The rule is supported by the following authorities:  25 Cyc. 414; Morse v. Times-Republican Printing Co., 100 N. W. 867, 80 Atl. 583.  Where capable of different meanings, the meaning intended is a question of fact for the jury.  (25 Cyc. 542; *In re* McDonald, 4 Wyo. 150; Spencer v. Minnick, *supra,* 129 Pac. 716; Morse v. Times-Rep. Printing Co., 100 N. W. 867.)   The matter published was libelous within the rule announced by the following authorities:   Heller v. Duff, 40 Atl. 691 (N. J.) ;  Scougale v. Sweet, 82 N. W. 1061 (Mich.) ;  Royce v. Maloney, 5 Atl. 395 (Ver.) ;  Tanner v. Embree, 99 Pac. 547 (Calif.) ;  Mattice v. Wilcox, 42 N. E. 270 (N. Y.) ; Weston v. Grand Rapids Pub. Co., 87 N. W. 258 (Mich.) ; Bee Pub. Co. v. Shields, 94 N. W. 1029 (Neb.), affirmed on rehearing, 99 N. W. 822.  Nearly every question propounded to plaintiff charges him either directly or by insinuations with a dereliction of duty or malfeasance in office.  The term "dive" used in the publication clearly referred to a disorderly place.  The questions propounded with reference to "Order No. 4" directly charge that plaintiff, as Mayor of Sheridan, deliberately set aside the law and ordinances of the city and wrongfully permitted the sale of liquor on Sunday and in the restricted district in violation of law.  A mere glance at the published matter will satisfy anyone that it constitutes a libel of the most venomous kind.  What blacker charge must be made against a public official before he is entitled to redress?

*Fred H. Blume* and *H. N. Gottlieb,* for defendants in error.

The petition does not allege a libel published of and concerning plaintiff, as Mayor.  That fact is negatived by an

allegation that the publication was of and concerning plaintiff. If the publication complained of applies to a private individual upon whom no public duty devolved, it could not be libelous. (Kilgore v. Newspaper Co., 96 Md. 16, 53 Atl. 716.) Inducements or innuendoes are necessary to show the defamatory meaning of the words. (13 Enc. Pl. & Pr. 36; Christal v. Craig, 80 Mo. 373), and that they were published of and concerning plaintiff, as Mayor. (Stewart v. Codrington (Fla.), 45 So. 809; Van Epps v. Jones, 50 Ga. 238; McCallum v. Lambrie, 145 Mass. 234, 13 N. E. 899; Harkness v. News Co., 102 Ill. App. 162; Hume v. Kusche, 87 N. Y. S. 109; Armstrong v. Sun Pr. P. Ass., 122 New York Supp. 531, 533.) An innuendo is a conclusion. A demurrer never admits a conclusion. It admits only facts well pleaded. In cases of doubt the question is one for the jury. (Morse v. Times, 100 N. W. 867, 870; 13 Enc. Pl. & Pr. 57; 25 Cyc. 545; Zinserling v. Journal Co., 57 New York Supp. 905; Harris v. Santa Fe T. Co. (Tex.), 125 S. W. 77; Basi v. Herald Co., 68 New York Supp. 1134; Warner v. Baker, 36 App. Dec. 493; Crockett v. McLanahan, 109 Tenn. 517, 72 S. W. 950; Weeks v. New Pub. Co. (Md.), 83 Atl. 162, 164; Watson v. Detroit Journal Co., 143 Mich. 430, 107 N. W. 81; Brown v. Ind. Pub. Co. (Mont.), 138 Pac. 258; Weeks v. New Pub. Co. (Md.), 83 Atl. 162; Verbeck v. Durya, 73 N. Y. S. 346; Penry v. Dozier (Ala.), 49 So. 909, 913; Krone v. Block, 144 Mo. App. 575, 129 S. W. 43; McCauly v. State (Tex.), 141 S. W. 975; Moore v. Johnson (Ky.), 144 S. W. 765.) If the language is not libelous *per se* no cause is stated, unless special damages are alleged. (Brown v. Ind. Pub. Co. (Mont.), 138 Pac. 258; McCauly v. State (Tex.), 141 S. W. 975.) The sufficiency of an innuendo charge is a question of law for the court, and if insufficient when considered in connection with the facts alleged, a general demurrer should be sustained. (Galveston Tribune v. Guisti (Tex.), 134 S. W. 239; Harris v. Santa Fe T. Co. (Tex.), 125 S. W. 77; Brinsfield v. Howeth, 107 Md. 278, 68 Atl. 566; Naulty v. Bulletin Co., 206 Pa. St. 128, 55 Atl. 862;

Gordon v. Journal Co., 81 Vt. 297, 69 Atl. 742; Diener v. Star Co. (Mo. App.), 132 S. W. 1143; Macurda v. Journal Co. (Me.), 82 Atl. 438; McCauly v. State (Tex.), 141 S. W. 975; Weeks v. News Pub. Co. (Md.), 83 Atl. 162; Hoffland v. Journal Co., 88 Wis. 369, 60 N. W. 263; 13 Enc. Pl. & Pr. 54; 25 Cyc. 545.) If the publication is not libelous *per se,* plaintiff is bound by an incorrect meaning ascribed by innuendo. (Patterson v. Frazer (Tex.), 79 S. W. 1077; Patterson v. Evans (Mo.), 134 S. W. 1030; Smith Bros. v. W. C. Agee & Co. (Ala.), 59 So. 647; Johnston v. Morrison, 3 Ariz. 109, 21 Pac. 405; Rossiter v. Press Co., 128 N. Y. S. 325; Ward v. MacBride, 24 Ont. L. R. 555, 20 Ont. W. R. 93; Mix v. Woodward, 12 Conn. 262; Merrill v. Marshall, 113 Ill. App. 447; Herrick v. Tribune Co., 108 Ill. App. 244; Hamilton v. Lowry, 33 Ind. App. 184, 71 N. E. 54; Callaghan v. Ingram, 122 Mo. 355, 26 S. W. 1020.) City ordinances relating to the Mayor's duties are not pleaded. The meaning of words employed in the publication are not shown by innuendo or by inducement to be defamatory. (Grant v. Dreyfus, 122 Cal. 58, 54 Pac. 389; DeArmond v. Armstrong, 37 Ind. 35; Windsor v. Ottofy (Mo. App.), 120 S. W. 693; Powell v. Crawford, 107 Mo. 595, 17 S. W. 1007; Moore v. Johnson (Ky.), 144 S. W. 765; Atchly v. State (Tex.), 120 S. W. 1010; Curtis v. Iseman, 137 Ky. 796, 127 S. W. 150; Hamilton v. Lowry, 33 Ind. App. 184, 71 N. E. 55; Grant v. New York Herald Co., 123 N. Y. S. 449; Stewart v. New York Herald Co., 77 N. Y. S. 216; McNamara v. Goldon, 194 N. Y. 316, 87 N. E. 442; Weeks v. News Pub. Co. (Md.), 83 Atl. 162; Brinsfield v. Howeth, 107 Md. 278, 68 Atl. 566; Peterson v. Seetman, 37 Md. 153, 11 Am. Rep. 534; Clute v. Clute, 101 Wis. 137, 76 N. W. 114; Cooper v. Seaverns, 81 Kans. 267, 105 Pac. 509; Krone v. Block, 144 Mo. App. 575, 129 S. W. 43; Craig v. Pyles, 18 Ky. Law. 1043, 39 S. W. 33; Sturdevant v. Duke, 159 S. W. 621; Hansbrough v. Stennett, 25 Gratt. (Va.) 494; McFabin v. David, 78 Ind. 445.) Words having an innocent, as well as a slanderous meaning, must be alleged to have been used in the slanderous sense,

otherwise the innocent meaning will be taken. (Cosand v. Lee, 11 Ind. App. 511, 38 N. E. 1099; Smid v. Bernard, 63 N. Y. S. 278; Barnard v. Press Pub. Co., 17 N. Y. S. 573, citing Odgers S. & L. 112, 13 Ency. P. & P. 57, 25 Cyc. 453.) Ordinances or by-laws relating to mayors' duties should be pleaded. (15 Enc. Pl. & Pr. 425; McClean v. Fowle, Fed. Cas. No. 8691; Miller v. Dorsey (Mo. App.), 129 S. W. 66; Seery v. Viall, 16 R. I. 517, 17 Atl. 552.) The innuendoes relating to the non-performance of duties, as mayor, are insufficient to show malfeasance, which implies some positive act. (Bouviers Dict. 2, p. 91.; Coite v. Lynes, 33 Conn. 115; State v. Lazarus, 39 La. Ann. 178; People v. Auburn, 33 N. Y. S. 165; Mudler v. State, 14 Neb. 183, 15 N. W. 330.) The first two clauses addressed to the Mayor are harmless. The newspaper wanted information and it had a right to ask for it. It is not averred that it was a public duty of the Mayor to confiscate gambling devices and the question propounded was not libelous. (Dawson v. Baxter, 131 N. C. 65, 42 S. E. 456; Westbrook v. Association, 65 N. Y. S. 399.) A charge of false swearing, without a colloquium of a judicial proceeding is not libelous. (Villikange v. Mllichamp (Wash.), 120 Pac. 876; Casselman v. Winship, 3 Dak. 292, 19 N. W. 412.) No slanderous meaning attaches to the term "restricted district." There are "restricted districts" of various kinds. No slanderous meaning attaches to the word "dive"; in the absence of averments by way of inducement indicating what is meant. (Peterson v. Snetman, 37 Md. 153, 11 Am. Rep. 534.) The meaning of "Order No. 4" is not made clear by innuendo or inducement. The article shows on its face that it was not intended to affect plaintiff adversely. (Wellman v. Sun P. & P. Co., 21 N. Y. S. 577.) Defendant newspaper was justified in seeking information. (Diener v. Star-Chronicle Co. (Mo.), 132 S. W. 1143; Farley v. McBride, 74 Neb. 49, 103 N. W. 1036; Herringer v. Ingberg, 91 Minn. 71, 97 N. W. 460; Diener v. Star-Chronicle Pub. Co. (Mo.), 135 S. W. 6; Coleman v. McLennan, 78 Kan. 711, 98 Pac. 281; Bearce v. Bass, 88 Me. 521, 34 Atl. 411; Briggs v.

Garrett, 111 Pa. 404, 2 Atl. 513.) A different rule of criticism applies in the case of a public officer from one where only a private individual is concerned. The gravamen of the action is damage to reputation. (Duvivier v. French, 104 Fed. 278, 43 C. C. A. 529; Cohan v. New York Times Co., 138 N. Y. S. 206; Steart v. Tribune Co., 40 Minn. 101, 41 N. W. 457; Donahue v. Coffey, 53 Conn. 51, 2 Atl. 397; 25 Cyc. 253-4-5, notes 32 to 40; Manie v. Hubbard, 110 Ky. 311, 61 S. W. 466; Herringer v. Ingberg, 91 Minn. 71, 97 N. W. 460; Brown v. Ind. Pub. Co. (Mont.), 138 Pac. 258; Hackett v. Providence, 18 R. I. 589, 29 Atl. 143; Heiler v. Duff (N. J.), 40 Atl. 691.) The headlines of the article infer that the Mayor had issued an order to close the club, which order had been defied by Toomer. Libel cannot hang on so slender a thread, as the matter of a doubtful meaning of the use of a word. (Diener v. Star-Chronicle, *supra.*) The charge against an officer must charge him with corruption or want of integrity. (Kilgore v. Evening Star, *supra.*) Mere neglect cannot be distorted into corruption or want of integrity. (Church v. Tribune Co., 119 N. Y. S. 885; Morrison v. Dean (Tex.), 104 S. W. 505; Warner v. Baker, 36 App. Dec. 493; Branch v. Pub. Geo. Knapp & Co., 222 Mo. 580, 121 S. W. 93; Sillars v. Collier, 151 Mass. 50, 23 N. E. 723; Schull v. Hopkins (S. D.), 127 N. W. 550.) When the publication itself is not libelous, but in order to make it so needs an innuendo, as in the case at bar, special damages must be pleaded, unless the publication itself is excessive. (Calfas v. World Pub. Co. (Neb.), 139 N. W. 830; Fry v. McCord, 95 Tenn. 678, 33 S. W. 568; Morrison v. Dean (Tex.), 104 S. W. 504.) The petition does not allege a knowledge of the falsity of the publication, nor want of good faith on the part of defendant. The publication is conditionally privileged. (Brown v. Ry. Co., 100 Va. 619, 42 S. E. 661.) The occasion determines the question of privilege, and it is for the court to determine when that occasion arises or exists. (Denver P. & W. Co. v. Holloway, 34 Colo. 432, 83 Pac. 131; Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233; Coleman v. McLellan, 78 Kan.

711, 98 Pac. 281; Lauder v. Jones, 13 N. D. 525, 101 N. W. 907; Evening Post Co. v. Richardson, 113 Ky. 641, 68 S. W. 665; Gatewood v. Garrett, 106 Va. 552, 56 S. E. 335; Cyc. 25-412; Canfill v. Hayden (Tex.), 75 S. W. 573; Chambers v. Leiser, 43 Wash. 285, 86 Pac. 627; Atlanta New Pub. Co. v. Medlock, 123 Ga. 714, 51 S. E. 756; Gosewich v. Dora, 161 Cal. 511, 119 Pac. 656; 25 Cyc. 469; Dickenson v. Hathway (La.), 48 So. 136; Ranson v. West, 125 Ky. 457, 101 S. W. 885; Henry v. Moberly, 6 Ind. App. 490, 33 N. E. 981; Hartung v. Shaw, 130 Mich. 177, 89 N. W. 701; Liles v. Gaster, 42 Ohio State, 631.) The allegation of malice is not sufficient. A simple averment that the publication was malicious has been held to be sufficient in cases where the question of privilege was not involved. (Ivey v. Sav. Co. (Ala.), 21 So. 531; 25 Cyc. 372.) A libel is a malicious publication. There is a distinction between malice in law and malice in fact. (Klink v. Colby, 46 N. Y. 427; Casey v. Hulgan, 118 Ind. 590, 21 N. E. 322; Nailor v. Pander, 2 Hardesty, 120 (Del.); Minter v. Bradstreet, 174 Mo. 444, 74 S. W. 668; Van Ingen v. Star Co., 157 N. Y. 695, 51 N. E. 1094; King v. Patterson, 49 N. J. L. 417, 9 Atl. 705; Bell v. Fernald, 71 Mich. 267, 38 N. W. 910; Sheibly v. Nelson (Neb.), 121 N. W. 458; Ranson v. West, 125 Ky. 457, 101 S. W. 885; Cadle v. McIntosh (Ind.), 99 N. E. 779; Hemmens v. Nelson, 138 N. Y. 524, 34 N. E. 342; Mower Hobart Co. v. Dunn & Co., 131 Fed. 812; Briggs v. Garrett, 111 Pa. 404, 2 Atl. 513; Schull v. Hopkins (S. D.), 127 N. W. 550; Peterson v. Steenerson (Minn.), 129 N. W. 147; 13 Enc. P. & P. 427.) If the publication shows express malice on its face the occasion of privilege may be overcome. (Gattis v. Kilgo, 128 N. C. 402, 38 S. E. 934; Brown v. R. R. Co., 100 Va. 609, 42 S. E. 661; Kent v. Bongartz, 15 R. I. 72, 22 Atl. 1023; Myers v. Hodges, 53 Fla. 197, 44 So. 357, 364-365.) Three doctrines obtain where public officers are concerned: First: The false statement doctrine; that is to say, the doctrine that no false statements of any kind can be made. (25 Cyc.

401-403.) Second: The good faith doctrine, holding that where the publisher honestly believes the statements to be true, he is not liable, as a matter of law, no matter how false the matter may prove to be. Third: The probable cause doctrine; that is, where the publisher has reasonable ground to believe the statements are true, he is not liable. The first is denominated as the "strict rule" and the other two as the "liberal rule." (Coleman v. McLellan, 78 Kan. 711, 98 Pac. 281.) The following cases adhere to the "strict rule": Cook v. Pub. Co. (Mo.), 145 S. W. 480; Miner v. Post, 49 Mich. 358, 13 N. W. 773; Konkle v. Haven (Mich.), 103 N. W. 850; Bee Pub. Co. v. Shields, 68 Neb. 750, 94 N. W. 1029, 99 N. W. 822; Mertens v. Pub. Co. (Neb.), 99 N. W. 847; Hallam v. Post Pub. Co., 55 Fed. 456, 59 Fed. 530; Merry v. Pub. Co. (N. J.), 74 Atl. 464; Lauder v. Jones, 13 N. D. 525, 101 N. W. 907; Gatewood v. Garrett, 106 Va. 552, 56 S. E. 336; Evening Post v. Richardson, 113 Ky. 641, 68 S. W. 665; Tanner v. Stevenson (Ky.), 128 S. W. 879; Canfill v. Hayden (Tex.), 75 S. W. 573, 80 S. W. 611. The "liberal rule" is supported by the following cases: Coogler v. Rhodes, 38 Fla. 240, 21 So. 109; Mott v. Dawson, 46 Ia. 553; Bays v. Hunt, 60 Ia. 281, 14 N. W. 785; Cherry v. Leader, 114 Ia. 298, 86 N. W. 323; Coleman v. McLellan, 78 Kan. 711, 98 Pac. 281, 20 L. R. A. N. S. — (Kan.); Redgate v. Rousch, 61 Kan. 480, 59 Pac. 1050, 48 L. R. A. 236; State v. Balch, 31 Kan. 465, 2 Pac. 609; O'Rourke v. Darley &c., 89 Me. 310, 36 Atl. 398; Marks v. Baker, 28 Minn. 162, 9 N. W. 678; Herringer v. Ingberg, 91 Minn. 71, 97 N. W. 460; Peterson v. Steenerson (Minn.), 129 N. W. 147; Gattis v. Kilgo, 129 N. C. 406, 38 S. E. 933; State v. Burnham, 9 N. H. 34, 31 A. D. 217; Palmer v. Concord, 48 N. H. 211, 97 A. D. 605; Carpenter v. Baily, 53 N. H. 590; Briggs v. Garrett, 111 Pa. 404, 2 Atl. 513; Jackson v. Times, 152 Pa. 406; 25 Atl. 613; Press Co. v. Stewart, 119 Pa. 584, 14 Atl. 613; Kent v. Bongartz, 15 R. I. 72, 22 Atl. 1023; Myers v. Longstaff, (S. D.), 84 N. W. 233, 14 S. D. 98; Boucher v.

Clark P. Co., 14 S. D. 72, 84 N. W. 237; Ross v. Ward, 14
S. D. 240, 85 N. W. 162; Express Co. v. Copeland, 64 Tex.
354; Shurtleff v. Stevens, 51 Vt. 501, 31 A. R. 698; Poss-
nett v. Marble, 62 Vt. 481, 20 Atl. 813, 11 L. R. A. 162;
Crane v. Water (C.), 10 Fed. 619; Manitoba &c. Co. v.
Canasa &c. Co., 22 Manitoba L. Rep. 576. The difficulty in
the application of either rule seems to lie in the fact that no
distinction has been made between publications which on
their face are excessive and those that are not. In nearly
all the cases holding the so-called "strict rule", the publica-
tion was excessive, as a matter of law. (25 Cyc. 401-403.)
Attacks on private character do not apply to a man in public
office. They relate to the individual, as distinct from his
public capacity. (Orth v. Featherly, 87 Mich. 317, 49 N. W.
641; Wood v. Bay, 177 Pa. 620, 35 Atl. 853; Post Pub. Co.
v. Maloney, 50 O. S. 71, 33 N. E. 810; Coton v. Lang, 108
Ia. 472, 79 N. W. 276; Ross v. Ward, 14 S. D. 240, 85 N.
W. 182; Myers v. Longstaff, 14 S. D. 98, 84 N. W. 233;
Boucher v. Pub. Co., 14 S. D. 72, 84 N. W. 237.) In the
following cases, the court declared, as matter of law, that
the occasion and publication were not privileged: Hay v.
Reid, 85 Mich. 296, 48 N. W. 507; Bouresseau v. Journal
Co., 63 Mich. 625, 30 N. W. 376; Farley v. McBride
(Neb.), 103 N. W. 1036; Cotulla v. Kerr, 74 Tex. 89, 11
S. W. 1059; People v. Fuller, 236 Ill. 116, 87 N. E. 336;
Buckstaff v. Viall, 84 Wis. 129; Ellsworth v. Hays, 71 Wis.
427, 37 N. W. 249; Wise v. Riley (Wis.), 132 N. W. 604;
Yager v. Bruce (Mo.), 93 S. W. 307; Coffin v. Brown, 94
Md. 190, 50 Atl. 567; Mattice v. Wilcox, 147 N. W. 624,
42 N. E. 270; Lewis v. Few, 5 Johns. 1. The following
cases distinguish between facts and criticisms in decisions:
Belknap v. Ball, 83 Mich. 583, 47 N. W. 674; Wheaton v.
Beecher, 66 Mich. 307, 30 N. W. 504; Dunnebacke v.
Tribune Co. (Mich.), 65 N. W. 583; Bronson v. Bruce, 59
Mich. 407, 26 N. W. 671; Owen v. Dewey, 107 Mich. 67,
65 N. W. 8; Williams v. Saunders (Va.), 73 S. E. 477;
Bee Pub. Co. v. Shields, 68 Neb. 750, 94 N. W. 1029; Mer-

tens v. Pub. Co. (Neb.), 99 N. W. 847; Fitzpatrick v. Dailey States, 48 La. Ann. 1116, 20 So. 173; Levert v. Pub. Co. (La.), 49 So. 206; Hamilton v. Eno, 81 N. Y. 116; Root v. King, 7 Cown, 613; Byrne v. Funk, 38 Wash. 506, 80 Pac. 772; Quinn v. Review P. Co. (Wash.), 104 Pac. 181; Oaks v. State (Miss.), 54 So. 79; Forks v. Haman (Tex.), 39 S. W. 21; Com. v. Clapp, 4 Mass. 163; Burt v. Advertiser Co., 154 Mass. 238, 28 N. E. 1; Edwards v. Pub. Co., 99 Cal. 431, 34 Pac. 128; Jarman v. Rea, 137 Cal. 339, 70 Pac. 216; Daughine v. Buehne (Cal.), 96 Pac. 880; Tanner v. Embree (Cal.), 99 Pac. 547; Donahoe v. Pub. Co., 4 Pennew, 166, 55 Atl. 336; Smith v. Burris, 106 Mo. 94, 16 S. W. 480; Cook v. Pulitzer (Mo.), 145 S. W. 480; Post Pub. Co. v. Hallam, 55 Fed. 456, 59 Fed. 530; Austin v. Hyndman, 119 Mich. 615, 78 N. W. 663; Eichoff v. Gilbert, 124 Mich. 353, 83 N. W. 111. The true rule seems to be set forth by Cooley on Torts, 1 Ed. 218, and the distinction is pointed in the cases of Williams v. Saunders, 73 S. W. 477, and Gatewood v. Garrett, 56 S. E. 335. Also in the case of Sweeny v. Baker, 13 Va. 158, 31 Am. Rep. 757, where it was held that to charge a candidate for office with being uneducated, lazy, idle and ignorant, that he is a social leper and should be deodorized, is not libelous.

*Enterline & La Fleiche* and *J. H. Burgess*, in reply.

The argument of defendant in error that the petition fails to state a cause of action in not alleging a publication against the plaintiff "as Mayor" or in his official capacity is untenable. The petition alleges that plaintiff was Mayor of the city; that the defamatory matter was addressed to "Mayor Kutcher"; the action is one for damages to his personal reputation, while Mayor and as Mayor; the rule in libel is that if the meaning charged in the innuendoes can be justified by the language of the article published, construing words according to their natural meaning and relation to the text, then the demurrer admits the meaning charged in such innuendoes. (25 Cyc. 469, notes 95-98.) The elaborate argument of counsel, on the subject of

definitions, is unconvincing. The word "liquor" as used in the publication meant "intoxicating liquor" (5 Words & Phrases, 4181) ; the word "dive," as used, means a low resort (3 Words & Phrases, 2142) ; "bar" means a counter over which liquors or food are passed to customers (Webster) ; the word "disorderly," as used, means offensive to good morals and public decency (14 Cyc. 465-482) ; "permit" means to allow or to suffer to be done (6 Words & Phrases, 5317). The shield of privilege should be pleaded and proved as a defense, and cannot be raised on demurrer. (25 Cyc. 468; 13 P. & P. 88.) The truth is not a good defense, unless published with good intent and for justifiable ends. (Wyo. Const., Art. 1, Sec. 20; Wertz v. Sprecher, 82 Neb. 834, 17 Ann. Cas. 758; Hutchins v. Page, 72 Atl. 689, 31 L. R. A. N. S. 132; Cardarelli v. Providence Journal Co., 80 Atl. 583 (R. I.) The right to criticize a public officer does not embrace the right to make false statements of fact, or attack his private character, or falsely impute to him malfeasance or misconduct in office. (25 Cyc. 402.) The law of libel is well settled. (25 Cyc. 250, 346, 355, 356 and 357; In re McDonald, 4 Wyo. 150, 25 Cyc. 542-543.) Interrogatories, sarcasm, irony, insinuations and even cartoons are just as effectual in conveying a libelous meaning, as direct and positive affirmation. (25 Cyc. 360-361.)

*Fred H. Blume* and *H. N. Gottlieb,* on petition for rehearing.

The publication in the absence of express malice is conditionally privileged; it was incumbent upon plaintiff to plead express malice. (Cadle v. McIntosh (Ind.), 99 N. E. 779; Dickenson v. Hathaway (La.), 48 So. 136; Ranson v. West, 123 Ky. 457, 101 S. W. 885; Henry v. Moberly, 6 Ind. App. 490, 33 N. E. 981; Liles v. Gaster, 42 O. S. 631.) Express and implied malice are distinguished by the authorities. (Hemmens v. Nelson, 139 N. Y. 524, 34 N. E. 342.) Privilege is unnecessary, when truth is proven. The only use of privilege is in cases where the

truth of the statement cannot be proved. (Newell Slander & Libel, p. 325.) Truth is privileged, but if the publication was made in good faith or upon probable cause, then it is privileged without reference to its actual truth. (Coleman v. McLellan, *supra;* Redgate v. Rousch, 61 Kan. 480, 59 Pac. 1050, 48 L. R. A. 236; State v. Balch, 31 Kan. 465, 2 Pac. 609; Marks v. Baker (Minn.), 9 N. W. 678; Herringer v. Ingberg, 91 Minn. 71, 97 N. W. 460; Peterson v. Steenerson (Minn.), 129 N. W. 147; Gatewood v. Garrett (Va.), 56 S. E. 335; State v. Burnham, 9 N. H. 34, 31 A. D. 217; Palmer v. Concord, 48 N. H. 211, 97 A. D. 605; Briggs v. Garrett (Pa.), 2 Atl. 513; Myers v. Longstaff (S. D.), 84 N. W. 233; Boucher v. Clark P. Co. (S. D.), 84 N. W. 237; Ross v. Ward (S. D.), 85 N. W. 162; Schull v. Hopkins (S. D.), 127 N. W. 550; Shurtleff v. Stevens, 51 Vt. 501, 31 A. R. 698; O'Rourke v. Daily &c., 89 Me. 310, 36 Atl. 398; Tanner v. Stevenson (Ky.), 128 S. W. 879; Crane v. Water, 10 Fed. 619; Miner v. Post & Tribune Co. (Mich.), 13 N. W. 773; Lauder v. Jones (N. D.), 113 N. W. 907.

Beard, Justice.

This is an action for libel, brought by the plaintiff in error against the defendants in error, in the District Court of Sheridan County. A general demurrer to the petition was sustained and plaintiff electing to stand upon his petition, judgment was entered dismissing the petition, and plaintiff brings the case here on error.

The plaintiff in his petition, after alleging that defendant, Post Printing Company, was a corporation; that defendant Tynan was the president and a member of the board of directors of said company; that said company was engaged in printing and publishing a semi-weekly newspaper, called The Sheridan Post, at Sheridan, Wyoming, which newspaper had a wide circulation in said city and elsewhere; and that plaintiff was the duly elected, qualified and acting Mayor of said City of Sheridan, alleged: "That on the said 18th day of March, A. D. 1913, the said defendants

maliciously published of, and concerning, the plaintiff in the said newspaper of the said Post Printing Company, which said newspaper was then widely circulated by them, the following false, malicious and defamatory matter, to-wit:

## "PIERCE SKIPS; DIVE REOPENS.

"VICTIM OF MURDEROUS ASSAULT PAID TO LEAVE TOWN. WOUND NOT HEALED. TOOMER DEFIES ORDER TO CLOSE CLUB—RIDGWAY SAYS CLOSED, BARTENDER ANSWERS TELEPHONE.

"Over the telephone Monday morning:

" 'Hello, is this the Maple Leaf Club?' 'Yes.'

" 'Is Toomer there?' 'Not just now; he's down at the house.'

" 'Who is this speaking?' 'This is the bartender.'

\*   \*   .\*   \*   \*   \*   \*   \*

"Chief of Police Ridgway's statement, five minutes later: 'The Maple Leaf Club is closed tighter than a drum. No, sir—there's nothing doing down there and won't be; it's closed up tight. Toomer asked me how long it was to remain closed and I told him "forever." '

\*   \*   \*   \*   \*   \*   \*   \*

"To Mayor Kutcher:      .

"Why, if you ordered the Maple Leaf Club closed, as you say, did you not see that your order was enforced?

"Do you not know it to be a fact that the club was never closed, except possibly for a day or two?

"If you sincerely intended to close the resort, why did you not order the bar removed after your attention had been called to the fact that a bar was operated on the premises?

"Why did you not confiscate gambling paraphernalia belonging to the club?

"Why did you not drive Toomer out of the restricted district? You knew that he lived at the negro dive operated by 'Lillian Russell.' Why was he not banished with other habitues of the district?

"What is the reason for Toomer's boasted protection?

"Why was Toomer permitted to sell liquor on Sunday? Why do you permit open violation of 'Order No. 4,' prohibiting the sale of liquor in the restricted district?

\*     \*     \*     \*     \*     \*     \*     \*

"Justice was thwarted by an unseen hand, Sunday, when Henry Pierce, victim of a murderous assault by George Toomer, negro dive keeper, was 'railroaded' out of town within 24 hours of the preliminary hearing of his assailant. Unless he can be found the case against Toomer will be dropped.

" 'Headed westward' is all the information the police can give with reference to the mysterious disappearance. He simply 'evaporated.'

"Two weeks ago Sunday—at midnight—Toomer visited Pierce's room, 12 North Sheridan avenue, for the purpose of collecting an alleged gambling debt which Pierce declared he owed another man. The money was lost in Toomer's 'club' in the Yager building, Grinnell avenue and Scott street. Words passed and Toomer shot Pierce through the head, the bullet entering his left eye and lodging in the neck. He was at once arrested and placed under bond, at first $100 and later increased to $1,000.

"Several days after the shooting Pierce was operated upon for the removal of the bullet and has since been convalescing at the State Hospital—until Sunday. Toomer's preliminary hearing was postponed until yesterday in order to permit the principal prosecuting witness to appear in person.

"Sunday morning, while Superintendent Shannon was at home, Pierce left the hospital with another negro unknown to the authorities. He has not been seen since. Where he has gone is a matter of conjecture—why and by what means is only too apparent. He was paid to leave the city.

"Dr. W. A. Steffen, county physician, who was attending Pierce, was out of the city Sunday morning and did not know the patient had left the hospital until informed by the chief nurse upon his return. County Attorney Diefenderfer

was confined to his home by illness yesterday, and knew nothing of the witness' getaway until late in the afternoon. Police and sheriff's office betray slight interest in the incident and have made no effort to locate Pierce.

"As an interesting detail of the affair it is learned that Pierce's hospital bills were paid, the money being received through Dr. Steffen. While admitting that he received money for the bills and turned it over to the hospital, the county physician states that Toomer did not appear in the transaction, although he virtually guaranteed Pierce's hospital and doctor bills. He smilingly asserts that he thinks he knows where he can collect for his own services.

"Toomer of course denies all connection with Pierce's disappearance, declaring that he had been out of town and only returned Sunday morning about 10:30. It was shortly after that hour that Pierce walked out of the hospital.

"As Pierce's wounds have not yet healed it would be a comparatively easy matter to apprehend him. What steps will be taken to locate and bring him back to Sheridan is a question whose answer is up to the county attorney. Without him Toomer will escape punishment for his crime. Possibly the 'third degree' applied to Toomer would result in disclosing the present whereabouts of his victim.

"That Pierce was paid to 'skip' is too obvious to require comment. He had no money at the time of the shooting, as evidenced by the fact that he could not pay his gambling debt."

It is then alleged:

"Sixth: That in and by said words and matter hereinabove quoted and set forth and so published by the defendants as aforesaid the said defendants, among other things intended to, and did accuse the said plaintiff of, and then and there and thereby intended to convey, and did convey, to the readers of said newspaper, of and concerning the plaintiff and which was by said readers so understood, each and all of the following:

"(a) That the said plaintiff as such said Mayor of the said City of Sheridan did unlawfully permit a dive, namely,

a disorderly place, to be carried on and conducted in the said City of Sheridan in violation of the laws and ordinances governing the said City of Sheridan, by the said Maple Leaf Club:

"(b) That the said Maple Leaf Club owned and had in its possession, within the said City of Sheridan, gambling paraphernalia at the place where it conducted said club used by its members for the purpose of gambling and that the said plaintiff as such said Mayor wrongfully and unlawfully failed to perform a duty to confiscate said gambling paraphernalia:

"(c) That the said plaintiff as such said Mayor of the said City of Sheridan did knowingly and unlawfully permit one Tooner, within the said City of Sheridan, to violate the laws and ordinances governing the said City of Sheridan, and that the said plaintiff as such said Mayor did unlawfully and corruptly protect the said Toomer in the violation of the said laws and ordinances:

"(d) That the said plaintiff as such said Mayor of the said City of Sheridan did unlawfully and knowingly and in violation of the laws and ordinances governing the said City of Sheridan, permit the said Toomer to sell liquor within the corporate limits of the said City of Sheridan on Sunday:

"(e) That the said plaintiff as such said Mayor of said City of Sheridan, did knowingly, unlawfully, and in violation of the laws, ordinances and orders governing the said City of Sheridan, permit open violations of the said liquor laws and ordinances prohibiting the sale of liquor within the said city:

"(f) That the said plaintiff has wholly failed to perform the duties of his office as such said Mayor of the said City of Sheridan, was and is a corrupt official, was and is guilty of malfeasance in office as such said Mayor and has connived with and protected persons within the said City of Sheridan in the violation of the laws and ordinances of the said City of Sheridan.

"Seventh: That by reason of such false, malicious and defamatory publication and of the facts and premises afore-

said, the plaintiff has suffered damage in the sum of ten
thousand dollars."

It is contended that the petition is insufficient in that it
does not allege that the the matter was published of and
concerning plaintiff in his capacity as Mayor, and that no
special damages are alleged. The matter alleged to be libel-
ous was addressed to plaintiff as Mayor and has reference
to his official conduct, and plainly shows on its face that it
was used of and concerning him in his official character.
When it so appears on the face of the publication no ex-
press allegation that it was so used is necessary. Odgers
on Libel and Slander (5th Ed.), 53; Stoll v. Houde et al.,
34 Minn. 193, 25 N. W. 63, in which case the allegation was
in the same form as in this case. The court said: "The
language of the alleged libel, as pleaded, plainly shows on
its face that it was used of and concerning the plaintiff in
his official character of county treasurer. Therefore, it was
unnecessary that the complaint should contain an express
averment that it was so used.". It is well settled that if the
language used was libelous *per se* it was not necessary to
allege special damages. The real question presented by the
demurrer is, whether the publication as alleged in the peti-
tion was libelous or not. Notwithstanding the elaborate
brief of counsel for defendant in error, we do not feel called
upon to enter upon an extended discussion of the law of
libel. For the purpose of determining the questions pre-
sented by the demurrer all matters well pleaded must be
taken as admitted, and for that purpose in this case the de-
murrer admits that plaintiff was the Mayor of the City of
Sheridan; that the statements contained in the published
article with respect to him were false, and were published
maliciously. In Newell on Slander and Libel (2nd Ed.)
37, after giving a large number of definitions of libel, the
author says: "In conclusion, it may be said that any pub-
lication, expressed either by printing or writing or by signs,
pictures or effigies or the like, which tend to injure one's
reputation in the common estimation of mankind, to throw
contumely, shame or disgrace upon him, or which tends to

hold him up to scorn, ridicule or contempt, or which is cal-
culated to render him infamous, odious or ridiculous, is
*prima facie* a libel, and implies malice in its publication."
And in 25 Cyc. 346, the rule is stated and supported by a
long line of decisions, that "any language, whether spoken
or written, imputing want of integrity, a lack of due qual-
ification, or a dereliction of duty to an officer or employee
is actionable *per se.*" To the same effect, see 18 A. & E.
Enc. Law (2nd Ed.) 949. . Where, as in this case, the ques-
tion is as to the sufficiency of the allegations of the petition
to state a cause of action, it is for the court to determine
whether or not a libel is set forth, but if the words alleged
are fairly susceptible of a construction which would render
them actionable, the pleading will be upheld and the ques-
tion will be submitted to the jury. (18 A. & E. Enc. Law
(2nd Ed.) 991, and cases cited.) It is also the well-settled
rule that the words are to be construed according to their
ordinary meaning and as it is believed they would be un-
derstood by those who read them, considered in the light of
the connection in which they are used and the subject-mat-
ter of the article, and for that purpose the entire article in
which they appear is to be looked to in determining whether
or not they are libelous.

Applying those rules to the case at bar, we think the
language used in the published article fairly susceptible of
a construction rendering it libelous, and that it would be so
understood by the readers generally. The headlines are
highly sensational, implying at least an unenviable state of
affairs in the City of Sheridan. It then proceeds to pro-
pound to the Mayor certain interrogatories which by plain
insinuations were well calculated to cause it to be suspected
and believed that plaintiff was guilty of such misconduct
in office as would naturally bring him into disrepute, and
to degrade him in the estimation of the people. The first
four questions imply that plaintiff had either misrepre-
sented his official actions with reference to closing the
Maple Leaf Club (which appears from other portions of

the article to have been a resort conducted by Toomer where liquor was sold, gambling permitted, and where Pierce lost his money), or that he was not sincere in the conduct of the duties of his office or discharging those duties with fidelity.  The fifth question we think would naturally be taken to mean that plaintiff was partial in the discharge of his official duties, and when read in connection with the sixth and seventh questions they imply that plaintiff was protecting Toomer in unlawful conduct while others had been banished, and that Toomer was being permitted by the plaintiff to sell liquor on Sunday in violation of the statutes of the state prohibiting such sales.  If plaintiff was conducting the office in the manner indicated in the published article, we think no one would contend that he was a fit person to fill the office of Mayor of a city and to have the superintending control of all of its officers and affairs as his powers and duties are prescribed by the statute. (Sec. 1637, Comp. Stat. 1910.)

It is further contended that the subject was a matter in which the public was interested and therefore privileged and the publishers protected by the provisions of our constitution which provides that every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right; and in all trials for libel, both civil and criminal, the truth, when published with good intent and for justifiable ends, shall be a sufficient defense.  But it is the *truth* when so published, and not falsehood, which is privileged.  Here we are considering a pleading only, in which it is charged that the statements contained in the published article are false and were published maliciously.  The true meaning of privilege and liberty of the press is well expressed in the case of Bee Publishing Co. v. Shields, 68 Neb. 750, 94 N. W. 1029, 99 N. W. 822, wherein the court said: "While the liberty of each is a sacred right dear to the hearts of an entire Anglo-Saxon civilization, yet the law-makers and framers of constitutions have all realized that liberty in the exercise of any natural right when unre-

strained by law leads to licentiousness, and have therefore wisely provided that any one exercising the liberty of speech or press within this state shall be held responsible for an abuse of such privilege. It is unquestionably the right of the press to freely discuss, criticise or comment fairly upon the acts or omissions of a public officer of the county, state or nation; but it is not permitted, under the guise of criticising official acts, to maliciously defame the character of an official." And in Odgers on Libel and Slander (5th Ed.) 198, the following is quoted from Davis & Sons v. Shepstone, 55 L. J. P. C. 51: "There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism not only by the press, but by all members of the public. But the distinction cannot be too clearly borne in mind between comment or criticism and allegations of fact, such as that disgraceful acts have been committed, or discreditable language used. It is one thing to comment upon or criticise, even with severity, the acknowledged or proved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct." Assuming, as we must do in ruling upon the demurrer, that the statements with respect to plaintiff's official conduct were false and were published maliciously, they were not privileged. Considering the entire article as we believe it would be understood by readers generally, its meaning appears plainly to accuse plaintiff with such misconduct in office as to render him unfit for such position and to disgrace and degrade him in the estimation of all good citizens, and was therefore libelous. Whether the language of the publication is fairly susceptible of all of the libelous meanings attributed to it by the plaintiff in the innuendoes is a question to be submitted to the jury under proper instructions. (Bourreseau v. Evening Journal Co., 63 Mich. 425, 30 N. W. 376, 6 Am. St. Rep. 320.) We are of the opinion that the petition states a cause of action, and that the court erred in sustaining the demurrer thereto. The judgment is reversed and the cause will be remanded

to the District Court with directions to vacate the judgment of dismissal and to overrule the demurrer.

*Reversed.*

Potter, C. J., and Scott, J., concur.

### ON PETITION FOR REHEARING.

Beard, Justice.

Counsel for defendants in error have filed a petition for a rehearing in this case, in which it is urged that the court erred in failing to decide the question of pleading malice; that the decision on the question of privilege is indefinite and confusing; that the court erred in holding that no privilege existed or exists in connection with the publication complained of; and that the judgment of the court is contrary to law. In the opinion handed down it is stated: "For the purpose of determining the questions presented by the demurrer, all matters well pleaded must be taken as admitted, and for that purpose in this case the demurrer admits that plaintiff was Mayor of the City of Sheridan; that the statements contained in the published article were false, and were published maliciously." By that statement it was intended to express the opinion of the court that the allegation that the article · was published maliciously was sufficient to admit evidence of express malice, if proof of that fact upon proper issue joined is necessary to entitle plaintiff to maintain the action. (Viele v. Gray, 18 How. (N. Y.) at 569.) With reference to the question of privilege, if we did not make our meaning clear we will try again. It is not contended that this publication was one of absolute privilege, but is of that class known as conditionally or qualifiedly priviledged. That is, it had reference to the acts of a public officer and with respect to his official conduct in which the public was interested. Such publication, when false, is privileged only when made in good faith and without malice. "Where the occasion upon which the words were published was a privileged one, the existence of malice shows that the party was not acting in the discharge of a duty, or in the exercise of a right which the

law, upon the ground of public policy, would otherwise presume to have been the fact. The protection which the occasion affords is founded upon the just and rational principle, that one who is not a volunteer, but whose duty or right it becomes to discuss or speak of the character of another, is not to be restrained by the fear of an action for defamation, but may freely declare what he honestly and truly believes. The law presumes that he did so, and that presumption exempts him from all liability, though what he said was unfounded in fact, and though its effect may have been highly detrimental; but the existence of malice removes this presumption, and places him upon the footing of a mischievous and malicious defamer." (Viele v. Gray, 18 How. (N. Y.) 550, 567.) In the case here the publication is directly alleged to have been made maliciously, that is, without just cause or excuse, and is entirely inconsistent with the contention of counsel that the petition discloses that the publication was conditionally privileged. The publication of false defamatory matter when published maliciously is not privileged, although it may concern the conduct of a public officer in which the public is interested; and that is what we understand the petition in this case to allege. We are not called upon, nor would it be proper, in determining the sufficiency of the petition to state a cause of action to decide in advance questions which may arise in the further progress of the case, although they have been ably and elaborately discussed in counsels' original brief; and that is why we said in the opinion that we did not feel called upon to enter upon an extended discussion of the law of libel. However, we may say that as advised at present we believe the rule of law is, that where false defamatory matter which is actionable *per se* is published and is not privileged, the law conclusively presumes it to have been published maliciously; but when it is made to appear that the publication was conditionally privileged the presumption is that it was published in good faith; and the fact that it was published, was false and defamatory would not alone be sufficient proof of malice. And in such case, to

be entitled to recover, the plaintiff must go further and prove that it was published maliciously; or, to state it otherwise, he must remove the presumption of the good faith of the publisher. What we held and to which we adhere is, that the published article as we understand it, and as we believe it would be understood by readers generally, it accused plaintiff with such misconduct in office as to tend to disgrace him and bring him into disrepute in the community, and therefore if it was false and was published maliciously, as alleged, it was libelous. We adhere to the conclusion stated in the opinion that the language of the article is fairly and reasonably susceptible of the meaning we attributed to it, and that the petition states a cause of action.                                  *Rehearing denied.*

POTTER, C. J., and SCOTT, J., concur.