[Civil No. 4354. Filed April 21, 1941.]

[112 Pac. (2d) 860.]

MAURICE ILITZKY, Appellant, v. HENRY GOOD-MAN and FRIENDLY LOAN & FINANCE COMPANY, a Corporation, Appellees.

Messrs. Gilmore & Herring, for Appellant.

Mr. James J. Caretto and Messrs. Gust, Rosenfeld, Divelbess, Robinette & Coolidge, for Appellees.

LOCKWOOD, C. J.—This is an appeal by Maurice Ilitzky, plaintiff, from an order sustaining a motion to dismiss a complaint, denying leave to amend, and dismissing the action against Henry Goodman and Friendly Loan & Finance Company, a corporation, defendants. The action was for an alleged libel. Defendants move to dismiss the original complaint on the ground that it failed to state a claim against them on which relief could be granted. The motion was duly argued and finally granted, whereupon plaintiff moved for leave to file an amended complaint which was presented to the court for consideration, and the motion was denied on the ground that the amended complaint did not and could not state a cause of action, and on September 14, 1940, the action was finally dismissed.

The question before us then is whether the court erred in refusing leave to file the amended complaint, for if it did the judgment of dismissal cannot be sustained. We consider then whether the amended complaint presented to the court did state a good cause of action. It sets up, in substance, the following facts which, for the purpose of the appeal, we must assume to be true. Plaintiff was engaged in the furniture business in Douglas, Arizona, during the years 1938 and 1939, and for some time prior thereto. Among his regular customers was one Dan Maxon, and during the years mentioned the latter purchased a considerable amount of furniture from plaintiff either for cash or on open account. On May 29, 1940, Maxon was not indebted to plaintiff in any amount, having completely paid any charges which had been made against him by plaintiff, and at no time had he executed a conditional sales contract for goods purchased from plaintiff. On the date last mentioned defendants wrote the following letter to Maxon:

"Dan Maxon
 "1429 A Avenue
  "Douglas, Arizona.
"Dear Mr. Maxon:
 "We have purchased from the United Trading
Stores, Incorporated of Phoenix, Arizona, a Condi-
tional Sales Contract (x) Open Account ( ) dated
*10–10 1939,* in the amount of *$90.00* Dollars for furni-
ture, or appliances purchased by you from *American
Furniture Store* (Dealer) at *Douglas, Ariz.*

 "This is to advise you that payments due on your ac-
count are payable only to *Business Mens Protective
Ass'n* at *533 10th St., Douglas, Ariz.,* (Friendly Loan
& Finance Company's Agent) and no other parties.

 "Strict compliance with this notice is for your pro-
tection.

                    "Yours very truly,
                       "FRIENDLY LOAN & FINANCE Co.
                       "(S) HENRY GOODMAN,
                       "HENRY GOODMAN, President.
 "HG:R
 "Better Business
   Bureau Member"

Defendants meant by this letter and it was under-
stood by Maxon to mean that plaintiff had falsely and
wrongfully forged, issued and sold to United Trading
Stores of Phoenix and to the defendants a conditional
sales contract in the amount of $90 covering goods
purchased from plaintiff by Maxon, when in truth and
in fact Maxon had never executed any conditional
sales contract, and plaintiff had never issued nor sold
such a contract to anyone, and defendants well knew
such to be the case, and that if they had a contract of
such a nature they knew it to be forged and knew the
origin thereof. It is further alleged that letters iden-
tical in language, except as to the addressees and
amount of the conditional sales contract, were sent to
a great number of customers of plaintiff, and that the
addressees of such letters were not indebted to plain-
tiff on any conditional sales contract and that plaintiff

had never made, issued nor sold conditional sales contracts signed by any of them, and that defendants well knew this to be true. The names of the addressees and the state of their accounts, if any, were set forth in the complaint. It appeared that the amount of money due plaintiff from such addressees on open account and not on conditional sales contracts, amounted to $461.11, and that as a result of the letters aforesaid the customers to whom they were sent have refused to trade further with plaintiff and have refused to pay him the amounts which they still owe on open account, and that he has lost custom and business from them in the total amount of $750. It is further alleged that the sending of all these letters was part of a course of conduct which defendants maliciously pursued for the purpose of injuring and impeaching the reputation of plaintiff, and that the facts and meaning of the letters were known by defendants at the time to be false. The prayer is for actual damages in the sum of $1,211, and $15,000 for punitive damages.

■ Civil libel, under the law of Arizona, may be defined as follows:

" 'A libel is any malicious falsehood expressed by writing, printing, or by signs or pictures, which tends to bring any person into disrepute, contempt or ridicule, or to blacken the memory of one who is dead; or any malicious defamation expressed by writing, printing, or by signs or pictures, which tends to impeach the honesty, integrity, virtue or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule. . . . ' " *Central Arizona L. & P. Co.* v. *Akers,* 45 Ariz. 526, 46 Pac. (2d) 126, 131.

■■ The question is whether the letters above referred to were libelous. Written communications which are claimed to be libelous fall into one of the three classes, (a) those which on their face and without the aid of any extrinsic matter come within the

definition above set forth, (b) those which on their face do not fall within the definition but which by reason of special extraneous circumstances actually do, and (c) those which even though aided by the surrounding circumstances cannot reasonably be held to fall within it. Class (a) is called "libelous *per se*" because it needs no allegation or existence of extraneous surrounding circumstances to make it such. Communications of this kind are assumed to cause damage, and no special damages need be alleged. Class (b) comprises those statements which on their face are not libelous but by reason of certain surrounding circumstances are actually such. These circumstances may be such as are known to the general public or are known only to the persons to whom the communication is published, but in either case in a complaint for libel they must be followed by what is commonly called a colloquium or innuendo setting forth both the extraneous circumstances and the reason why under such circumstances the communication, otherwise innocent, becomes libelous. In this case no damages are presumed, but they must be specially alleged and proved. Class (c) comprises those communications which are not only innocent on their face, but have not attending circumstances which would render them libelous. We may illustrate the difference as follows. A writes a letter to B, stating "X murdered Y." This letter, if untrue, is libelous on its face, for it specifically accuses X of a crime, and would be understood by all persons to do so. An illustration of (b) is a letter in which A says to B "X was the only person who was present at the home of Y on May 1 between the hours of six and nine." On its face this is a perfectly innocent and harmless statement. If, however, B knows that Y came to his death under circumstances which show that he must have been murdered by some one in his home between the hours above stated, the state-

ment is libelous because B reasonably understands the letter as meaning that X must have been the one who murdered Y. An illustration of (c) is where A writes to B the same letter as set forth in the previous example, but Y has not been murdered nor harmed nor has any untoward incident occurred in regard to him at the time mentioned. The test, as can be seen in each case, is what, under the circumstances as known to B, would the latter have understood the letter to mean.

Applying this rule to the letter in question, it is clear that it does not fall within the first category. Whether it falls in the second depends upon whether Maxon, under the circumstances set forth in the complaint, might reasonably have assumed it meant that plaintiff had either forged or uttered a forged conditional sales contract which had passed into the hands of defendants. The amended complaint alleges that Maxon had never given any conditional sales contract to plaintiff. He must, therefore, have known that the letter which contained a statement that defendants held a contract of this nature which had not been paid was false. It is true, as suggested by defendants, that honest mistakes are frequently made by creditors in regard to the amount and character of their debtors, but in view of the peculiar relations of the different parties, we cannot say that such is the only construction which Maxon might reasonably have put upon the letter. Knowing it to be false, he might have believed either one of two things, (a) that defendants had made an honest mistake and held no such contract, or (b) that if they actually held a contract which on its face showed that it was executed by him and unpaid, that someone somewhere along the line must have forged it. Could he reasonably have believed it was plaintiff or would the necessary implication be that it was someone else? We think that Maxon could reasonably have

believed that since plaintiff was the only man who knew of the details of the business relations previously existing between them, it must have been through some action on his part that the alleged conditional sales contract which Maxon knew was not made by him had passed into the possession of defendants. Since, then, the circumstances known to Maxon were such that he might reasonably have believed the communication meant that defendants were charging plaintiff with having forged or issued a forged conditional sales contract, the communication falls within class (b), and a question was presented for the determination of the jury as to whether Maxon did reasonably believe it meant that plaintiff had forged or issued a forged conditional sales contract with his name attached thereto.

We are of the opinion that the amended complaint did state a libel by defendants against plaintiff. Whether plaintiff can prove the allegations of his complaint is, of course, a question which would be presented at the trial of the case.

The next question is whether special damages were properly alleged, for since the libel, if any, is in class (b), damages are not presumed but must be alleged and proved. It is alleged that defendants had sent similar letters to many of plaintiff's customers as part of a preconceived plan to injure his reputation, some of whom were still indebted to him upon open account, although in no case was there a conditional sales contract outstanding, and that as a result of this system or plan many of plaintiff's customers who had received such letters refused to pay their accounts, not knowing who was really entitled thereto, and had refused to trade further with plaintiff. We think there is sufficient allegation of special damages to take the case to the jury. If the amended complaint tendered

did set up a good cause of action, we think it was error for the court to refuse permission to file it.

The judgment is reversed and the case remanded, with instructions to permit the filing of the amended complaint tendered by plaintiff, and for such further action as may be proper under the circumstances.

McALISTER and ROSS, JJ., concur.