479 P.2d 730

Harry R. BERG and R. E. Burdette, individually, and as partners doing business under the firm name and style of Lake Havasu Mobile Home Park, Appellants,

v.

Erwin HOHENSTEIN and Jennie A. Hohenstein, his wife, Appellees.

No. 1 CA–CIV 1419.

Court of Appeals of Arizona, Division 1, Department A.

Jan. 27, 1971.

**584**

Philip T. Goldstein, Ltd., by Philip T. Goldstein, Phoenix, for appellants.

Hiser & Bruno, by H. Louis Hiser, Kingman, for appellees.

### DONOFRIO, Judge.

This is an appeal by plaintiffs from an order dismissing their complaint brought against appellees-defendants for libel based on an article published by defendants in a newspaper, the Lake Havasu City Herald. The court ruled that the alleged defamatory publication was not libelous per se, and that in view of its per quod character proof of special damages was required. The parties will be designated as they were in the trial court. .

The complaint alleged that plaintiffs were licensed real estate brokers who generally engaged in the real estate business throughout the State of Arizona; that plaintiffs in pursuance of their vocation entered into a partnership which acquired a subdivision in Mohave County known as "Lake Havasu Mobile Home Park." Plaintiffs and their partnership commenced to do business under the firm name of Lake Havasu Mobile Home Park. They proceeded to subdivide, develop and sell improved lots to the public by solicitation, circulation and advertise-

ment. It was averred that the general success of their business was largely dependent upon the public estimate of their integrity and truthfulness regarding the quality of their property.

In January 1970 defendant Erwin Hohenstein, formerly employed by plaintiffs as a salesman at their subdivision, caused an article in the form of an advertisement to be published in the Lake Havasu City Herald, to-wit:

### "NOTICE

### TO WHOM IT MAY CONCERN

As of this date I am no longer responsible to try to right any of the representations concerning units 1 & 2 of Lake Havasu Mobile Home Park. I am no longer a Salesman in that office—however—I still own and have full say of all the road and business frontage and the rest of the acreage in the 70 acre tract.

### ERWIN HOHENSTEIN"

Plaintiffs charged that the article conveyed to the readers that the plaintiffs were tricky, dishonest and guilty of fraudulent misrepresentation in the sale of their improved lots at Lake Havasu Mobile Home Park.

The crucial question presented is whether the publication is libelous per se. The law in our state is well settled:

"Civil libel, under the law of Arizona, may be defined as follows:

' "A libel is any malicious falsehood expressed by writing, printing, or by signs or pictures, which tends to bring any person into disrepute, contempt or ridicule, or to blacken the memory of one who is dead; or any malicious defamation expressed by writing, printing, or by signs or pictures, which tends to impeach the honesty, integrity, virtue or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule. * * *" ' Central Arizona Light & Power Co. v. Akers, 45 Ariz. 526, 46 P.2d 126, 131." Ilitzky

v. Goodman, 57 Ariz. 216, 220, 112 P.2d 860, 862 (1941).

Publications alleged to be libelous have been categorized by our Supreme Court:

"* * * Written communications which are claimed to be libelous fall into one of the three classes, (a) those which on their face and without the aid of any extrinsic matter come within the definition above set forth, (b) those which on their face do not fall within the definition but which by reason of special extraneous circumstances actually do, and (c) those which even though aided by the surrounding circumstances cannot reasonably be held to fall within it. Class (a) is called 'libelous *per se*' because it needs no allegation or existence of extraneous surrounding circumstances to make it such. Communications of this kind are assumed to cause damage, and no special damages need be alleged. Class (b) comprises those statements which on their face are not libelous but by reason of certain surrounding circumstances are actually such. These circumstances may be such as are known to the general public or are known only to the persons to whom the communication is published, but in either case in a complaint for libel they must be followed by what is commonly called a colloquium or innuendo setting forth both the extraneous circumstances and the reason why under such circumstances the communication, otherwise innocent, becomes libelous. In this case no damages are presumed, but they must be specially alleged and proved. Class (c) comprises those communications which are not only innocent on their face, but have not attending circumstances which would render them libelous. * * *" Ilitzky v. Goodman, supra, 57 Ariz. at 220–221, 112 P.2d at 862.

In an early case our Supreme Court said: "* * * There can be no doubt that, when a slander or libel is couched in language having a covert meaning not apparent upon its face, it is necessary for a plaintiff not only to allege and prove the slanderous or libelous sense in which the words were used, but also that they were understood in the same sense by those to whom they were addressed. * * *" Arizona Publishing Co. v. Harris, 20 Ariz. 446, 453, 181 P. 373, 376 (1919).

And in Phoenix Newspapers, Inc. v. Choisser, 82 Ariz. 271, 312 P.2d 150 (1957), it was stated that:

"* * * [T]he entire article must be considered as a whole. (citations omitted) This is true not only with reference to its exact language but in accordance with its sense and meaning under all the circumstances surrounding its publication. * * *" 82 Ariz. at 275, 312 P.2d at 153.

Applying these principles and viewing the language of the notice as a whole and in the light of a reader of average interest (Phoenix Newspapers, Inc. v. Church, 103 Ariz. 582, 447 P.2d 840 (1968), cert. denied 394 U.S. 959, 89 S.Ct. 1307, 22 L.Ed.2d 560 (1969)), we cannot say as a matter of law that it was libelous per se. We cannot read into the notice as do plaintiffs that the plaintiffs were tricky, dishonest and guilty of fraudulent misrepresentation in the sale of their property. A careful reading does not reveal the use of any of these words.

Where, as here, such a meaning cannot be ascribed to the words without resort to extrinsic circumstances, those circumstances (innuendo) must be shown. Further, because damage is not presumed in this situation, a pleading of special damage is required, and such damage must be specifically stated. 16 A.R.S., Rules of Civil Procedure, Rule 9(g).

Plaintiffs argue that the word "right" in its descriptive sense is synonymous with "correct, accurate, exact, precise, and nice", citing Webster's New Dictionary of Synonyms 1968, and that the antonym for "right" is "wrong". They also urge that the word "representation" in accordance with the dictionary is "an implication or statement of fact to which legal liability may attach if material"; and hence

the word "representation" imputes and conveys a statement of truthful fact; that accordingly, defendant's admonition to the readers that he will no longer be responsible to "right any of the representations" conveys that plaintiffs' sales were fraudulent and untruthful. Because of this they argue that no special damage need be pleaded or shown. The sole question, as previously stated, is whether these words are libelous per se.

Although the antonym of "right" is "wrong", we can conceive of many instances where one could be called upon to right something that was in a sense wrongful, yet the wrongfulness would not be created by any dishonest or fraudulent act. For example, in the sale of property, real estate men are sometimes given to representations which could well be considered incorrect or inaccurate, and therefore in need of explanation or adjustment if the seller and the parties were so disposed. These mere general commendations of property offered for sale, frequently termed "puffing", are not actionable misrepresentations. Law v. Sidney, 47 Ariz. 1, 53 P.2d 64 (1936).

Then too, sellers of property sometimes unwittingly create situations which may be by the buyers considered wrongful situations in need of correction. In such instances a notice such as the one published by the defendant here could well amount to nothing more than the writer's declaration that he no longer intends to bear any responsibility for the correction of the matter.

In this case the publication is not libelous per se and special damage must be pleaded and shown.

Affirmed.

STEVENS, P. J., and CASE, J., concur.