SYLVESTER v. ARMSTRONG

(No. 2066; December 5, 1938; 84 Pac. (2d) 729)

384

For the appellant, there was a brief and an oral argument by *Walter Q. Phelan* of Cheyenne.

For the respondent, there was a brief by *J. R. Armstrong* of Rawlins and *C. R. Ellery* of Cheyenne, and oral argument by *Mr. Ellery*.

BLUME, Chief Justice.

The defendant wrote the following letter:

"Armstrong & Armstrong
Attorneys at Law
Rawlins, Wyoming.

Mr. George W. Plummer,
Cheyenne, Wyoming.

Dear George: I have hesitated to write or worry you for a long time on account of your illness. But things have come to such a pass in the Hotel that some action must be taken. If you do not act I will file suit and ask for an accounting, and removal of your Manager. He is a Drunk, a Whoremonger, and is shaking down. You are at liberty to tell him if you so wish. Alto he may kill me. He has recently threatened to kill Dr. Jeffrey. He has shot a hole in the floor of the Hotel, threatened to kill his whore, and has recently driven her out of town. He is so bad that his own son whom he has had on the pay roll for some time has left town because he said his father was crazy. Saturday Joe Tierney with a friend went to the Hotel and were having some drinks, and your Manager who stands so high with you tried to take a Shrine Pin off the guest of Mr. Tierney and when he demurred, Charlie punched him, and only for Tierney the stranger would have beat him up. They then took their drinks in another

room, and Charlie then fired a trusted employee for permitting them to go in the room.

I have been told fifty times that Charlie drinks at least two quarts a day. At $3.50 a quart, and I pay from $4 to $4.50 for what I buy, the Hotel is loosing in the neighborhood of $250 a month in paying for his drinks. Walter Todd a crazy negro of Rawlins would be a better Manager.

There is no question in my mind but that large profits are being made in the Hotel. Former employees tell me so. You felt hurt when I told you once that Charlie was robbing you and me, and if not You and Charlie were robbing me. Well I am being robbed. I have always thought you were honest. But you told a friend of mine once that you would see that I never made any thing out of the Hotel? Now why? You told me you had no objection to me buying in? Have I ever done you any wrong? You have drawn almost two years salary without a single inspection, I have not complained. I regret very much your illness. If I had control, and you had 40%, and I was ill, I surely would ask you under the circumstances to look after the Hotel till I recovered. But no, I did not even have the opportunity to look at the books. I am insulted when I go to the Hotel. I call up friends in the Hotel and ask for them and they (the office force) tell me they are not in. I get my hat walk to the Hotel my friends are there and they tell me they were not out. The lease will expire in about two years. The Whitten Estate will be closed in a few months. The property will come to me as Trustee. No one will dictate to me concerning the new lease. Things will be different then. I will see the furniture and fixtures burned as a Bonfire unless I get a square deal.

As bad as the management is there is plenty of money made now. You would rather pay it out in Revenue to the Government than to pay me my percentage of the profits. There is no reason why you should not have authorized Charlie to pay me say $100 per month and to have had me aid you during your illness in keeping things straight here. I would have done as much for you.

I am writing this for a number of reasons, but the primary purpose is not the selfish one, for I am still

able to make a living. But I have been told at least three times within a week that I should write you that there will be a killing here if something is not done. That might not be of too much consequence, but even if I am only a minority stockholder I would get an undue amount of criticism for permitting this condition to exist. You would not feel the criticism because you are remote from Rawlins.

If you want to play the game fairly with me, as I use to think you would, I'll try to help work out something that will be a benefit to both of us. I know good men whom we can get to run the place. A poor man can run it better than what you have. I have many other things I could tell you, but if what I have already said does not register, more would do no good. You have confidence in McDougle why don't you ask him to investigate this for you. Ask your own Nephew. Ask anyone in whom you have confidence. I know full well you don't like me, but I have never done anything but right with you and I'll continue to do that. Hope you are improving.

Yours,<br>L. E. Armstrong."

The envelope, with defendant's return card, was duly stamped and addressed to Mr. George W. Plummer. Plaintiff brought this action against the defendant. He alleged that at the time of the writing of this letter he was manager of the Ferris Hotel in the city of Rawlins of this state, under the appointment and authority of George W. Plummer, the principal owner of the hotel, and that the letter was libelous and written maliciously. He claims damages in the sum of $20,000. The defendant answered, admitting that the plaintiff was manager as above stated, denied the other allegations of the petition, and in separate defenses alleged the truth of the statements made in the letter, and pleaded that the letter was written on a privileged occasion. The cause came on for trial with a jury duly empanelled. Little evidence was introduced. It was shown that defendant is an attorney at law; that the

letter was duly mailed; that it was given by Mr. Plummer to the plaintiff about thirty days after the date of the letter; that the Ferris Hotel is conducted by a corporation, of which George W. Plummer owned 60% of the stock and the defendant 40%, and that plaintiff's salary was paid him by the corporation. No extrinsic evidence of malice was introduced. At the close of the plaintiff's evidence, defendant moved for a directed verdict. The motion was sustained, and from the judgment rendered accordingly, the plaintiff has appealed.

■ It is contended by the defendant that there is no evidence that the letter was ever read by Mr. Plummer; that it accordingly fails to show that there was a publication thereof. In the ordinary course of business, however, it is customary for men who receive a letter, especially by first class mail, to read it, and many presumptions or inferences arise from such ordinary course of affairs. 22 C. J. 103. The letter itself referred to the plaintiff, as shown by the testimony. The envelope did not. Still, it was handed to the plaintiff by Mr. Plummer. No reason could be assigned why that would have been done, unless it had been read by the person to whom it had been sent. We think, accordingly, that the evidence was sufficient from which to draw the inference that it was in fact read by the latter.

■ It is next contended by the defendant that the letter was a qualifiedly privileged communication; that no evidence of actual malice is shown; that this was essential; that plaintiff, accordingly, has failed in showing a cause of action. The letter was written by defendant, who owned forty per cent of the stock in the hotel corporation, to one who owned sixty per cent of the stock. There can, accordingly, be no doubt that the occasion was a privileged one, and hence, as the authorities hold, the letter was conditionally or qualifiedly privileged. 17 R. C. L. 341, 359, 360; 36 C. J.

1218, 1223, 1241, 1265, 1266; Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117; Bacon v. Central R. R. Co., 66 Mich. 166; Montgomery Ward & Co. v. Watson, 55 F. (2d) 184; Chambers v. Leizer, 43 Wash. 285, 88 Pac. 627, 10 Ann. Cas. 270 and note; Trimble v. Morrish, 152 Mich. 624, 116 N. W. 451, 16 L. R. A. 1017; Quartz Hill Min. Co. v. Beal (CCA) 20 Ch. D. 509; Brown v. Elm City Lumber Co., 167 N. C. 9, 82 S. E. 961. In Klinck v. Colby, 46 N. Y. 427, 433, approved in Ashcroft v. Hammond, supra, it was said that "where both the party making and the party receiving the communication, have an interest in it, it has never been doubted that it was privileged."

"In those cases where one person has an interest in the subject matter of the communication and the person to whom the communication is made has a corresponding interest, every communication honestly made in order to protect such common interest is privileged by reason of the occasion. The interest is generally a pecuniary one." Newell, Slander & Libel, (4th Ed.) Sec. 432.

In Bacon v. Central R. R. Co., supra, the court, speaking of a communication relating to an employee, stated among other things:

"It is not only proper, but it is of the utmost importance to the company, and to the public having business transactions with it, that the servants employed by it shall be men of good character, temperate and efficient. Corporations may be liable for the negligence of their employees."

We are cited by counsel for the plaintiff to Shoemaker v. South Bend Spark Arrester Co., 135 Ind. 471, 35 N. E. 280, 22 L. R. A. 332, referred to in the text in 17 R. C. L. 343, where it is said that "a publication issued solely to further the financial ends of the publisher enjoys no privilege." An examination of the case discloses that the defendant published false and

injurious statements against a competitor. The case accordingly has no bearing herein, and it may be freely conceded that "a defamatory publication made purely in the interest of one's own business for the purpose of securing an advantage over a rival is not privileged,' 'as stated in 17 R. C. L. 359, also cited by counsel for plaintiff.

Where a communication is one of qualified privilege, no presumption, which might arise from the character of the communication, exists. The expressions used in this connection are varied. It is sometimes said that the presumption of malice is rebutted, or that the burden of proof is shifted. Note 7 Ann. Cas. 644-648. These expressions state the same ultimate result: The communication in such case will, prima facie, be considered as having been made in good faith—i. e., without malice, and the burden of proving the existence of malice is cast upon the person claiming to have been defamed. The plaintiff must show that the defendant was governed by a bad motive, and that he did not act in good faith, but took advantage of the occasion to injure the plaintiff in his character or standing. Note 3 L. R. A. N. S. 697; note Ann. Cas. 1913C, 1072; Newell, supra, sections 342, 347; note 54 A. L. R. 1143; note 7 Ann. Cas. 844; 36 C. J. 1218-1222; 17 R. C. L. 342, 419; Gust v. Montgomery Ward & Co., 229 Mo. App. 371, 80 S. W. (2d) 286. We are cited by counsel to Kutcher v. Post Printing Co., 23 Wyo. 197, 147 Pac. 517. We do not think that the case is inconsistent with what has been stated. It was decided upon the question as to whether or not, when malice of defendant was alleged, the petition stated a cause of action. In such case the allegation of malice was, of course, deemed admitted, thus eliminating the qualified privilege. In this case the allegation was denied. Some of the authorities hold, furthermore, that in a case like that at bar the plaintiff must also prove the falsity of

the communication. 36 C. J. 1222. Other authorities seem to hold the contrary. 36 C. J. 1223; see note Ann. Cas. 1918 C 781. We need not investigate this point, but confine ourselves to the point as to whether or not malice appears, since in this case the plaintiff failed to produce any evidence of the falsity of the charges and at least any extrinsic evidence of malice.

It is true, as contended by counsel for the plaintiff, that the communication must not be excessive, either as to the extent of its publication or as to the character of the language used. It must not go beyond the requirements of the occasion. Irrelevant matters, casting aspersions upon plaintiff, cannot be introduced. Newell, supra, Secs. 392, 425, 439; 36 C. J. 1248, 1266. Hence it has been held that malice may at times be inferred from the language used in the communication, and that plaintiff is not confined to extrinsic evidence in showing such malice. 17 R. C. L. 412, 419; 37 C. J. 77, 78, 84; Odgers, Libel & Slander, (5th Ed.) 352; note 7 Ann. Cas. 846-7.; note 3 L. R. A. N. S. 697. The language used in the communication in question is severe. The court cannot afford to encourage letters or other statements containing excessive, intemperate and reckless statements, for the loss of a good reputation is one of the greatest which man can incur. We have, accordingly, given more than ordinary care in investigating whether or not the trial court erred in taking away from the jury the right to determine as to whether or not the letter on its face discloses actual malice. We may here say at once that there is no evidence of excessive publication, for the letter was sent only to the one associate of the defendant in the hotel corporation. See Montgomery Ward & Co. v. Watson, supra.

It is the duty of the court in the first instance to determine, as a matter of law, whether or not in a case like that before us the language used is such as

tends to show malice. 37 C. J. 107-108; Townsend on Libel & Slander, Sec. 288; Carver v. Grayson, 104 Kans. 96, 177 Pac. 539; Lehner v. Berlin Pub. Co., 209 Wis. 536, 245 N. W. 685, where it was said that "whether or not there has been an abuse of the privilege, the facts otherwise not being in dispute, is a question of law for the court." In Sherman v. International Publications Inc., 214 App. Div. 437, 212 N. Y. S. 478, which involved a newspaper publication, it was said that "as to whether or not the article in question exceeded the bounds of fair criticism and comment was a question of law for the determination of the court." In Williams v. Standard-Exam. Pub. Co., 83 Utah 31, 27 P. (2d) 1, 17, the court stated that "the question of whether a qualifiedly privileged article is written or published with malicious motive or otherwise, is, generally speaking, a question of fact to be determined by the jury. However, in the absence of proof that such communication was published with actual malice, it is within the power and the duty of the court to say as a matter of law that the motive of the publication was without malice." The last three cases do not, we think, mean to state that the jury can never pass upon the question of whether or not the privilege has been abused in a case like that before us, but merely that the court passes upon the matter in the first instance. In Gust v. Montgomery Ward & Co., 229 Mo. App. 371, 80 S. W. (2d) 286, 291, the court stated:

"There is no apparent reason why a different rule should be applied in a slander case than in other suits at law, and where the words spoken or written are clearly within the privilege of the occasion, and there is no substantial evidence of malicious intent, certainly the trial court would have the right to direct a verdict for defendant. If the manner in which words be spoken, and the words themselves so transcend the bounds of the privilege that reasonable men might differ on the question as to whether or not such man-

ner and such words indicated the presence of malice, then, in our opinion, the court should not take that question from the jury."

In the case of Montgomery Ward & Co. v. Watson, 55 F. (2d) 184, the criterion was stated as follows:

"Language used in making an accusation may under some circumstances be sufficient of itself to carry the case to the jury on the issue of express malice, as where it is altogether disproportionate to the occasion. * * * But to be sufficient for such purpose it must of itself have a reasonable tendency to prove that the false accusation proceeds from the ill will or ulterior motive which is the essence of malice."

See further Mulderig v. Wilkes-Barre Times, 215 Pa. St. 474; Trimble v. Marvish, 152 Mich. 624, 116 N. W. 452; 16 L. R. A. N. S. 1017.

In order, then, that the court may submit a case to the jury, the language used must at least tend to show malice. It is, perhaps, not surprising that courts have not applied this rule altogether uniformly. Some of the courts have been more liberal than others in sending a case to the jury when the language used has been severe. Some have nearly gone to the extent of holding that where the language is severe, the jury should pass upon the case under proper instructions. Farley v. Thalheimer, 103 Va. 504, 49 S. E. 644; Snyder v. Featherly, 153 Va. 762; Millard & Rigny v. W. R. Keesee et al., 104 W. Va. 168, 139 S. E. 650, 54 A. L. R. 1139. But that cannot be accepted as the rule of law applicable in cases of this kind, for it would have a tendency to entirely nullify the qualified privilege. That was well expressed in the case of Gattis v. Kilgo, 128 N. C. 402, 38 S. E. 931, where the court said:

"It is perfectly clear to us that if in all cases of privileged communications, the words of the published matter are to be submitted to the jury for their consideration as evidence of malice, then the privileged occa-

sion would be no protection whatever. A privileged communication and one not privileged would stand on precisely the same footing if the words of the privileged one could be made evidence in all cases."

See also Trimble v. Morrish, 152 Mich. 624, 116 N. W. 452, 16 L. R. A. N. S. 1017.

In the case of Vaughn v. Lytton, 126 Va. 671, 101 S. E. 865, the court stated that if there is room for doubt whether the language used is out of proportion to the occasion, the jury should be permitted to pass upon the question. The statement seems to be an unhappy one. It would seem to be inconsistent with the later case of Chesapeake Ferry Co. v. Hudgins, 155 Va. 874, 165 S. E. 429, 441, where the court stated that "evidence which does no more than raise a suspicion that the defendant *might* have been actuated by malice or only a doubt as to the good faith of the defendant is, as a matter of law, not sufficient to rebut the presumption of lack of malice or establish the existence of malice." If there is a doubt in the mind of the court as to the tendency of the language of the communication, then, it would seem, it appears to be equivocal and equally consistent with malice and bona fides, and the rule is clear, and has been announced by many authorities, that when such is the case the presumption of lack of malice has not, as a matter of law, been rebutted, and there is nothing upon which the jury can pass. Newell, supra, Sec. 280; Kenny v. Gurley, 208 Ala. 623, 95 So. 34, 26 A. L. R. 813, 817; Butterworth v. Todd, 76 N. J. L. 317, 70 Atl. 139; Jackson v. Hopperton, 16 C. B. D. 829, 143 Eng. Repr. 1352; Massee v. Williams (CCA), 207 Fed. 222; Montgomery Ward & Co. v. Watson, 55 F. (2d) 184, 186; Gust v. Montgomery Ward & Co., 229 Mo. App. 37, 80 S. W. (2d) 286; Nat. Disabled Soldiers League v. Haan, 4 F. (2d) 436, 441; Newell, supra, Sec. 280. In the case of Ashford v. Newspaper Co., 41 App. Cas.

395, 405, the court, speaking of a newspaper publication, stated that "before the inference of express malice can be indulged, the publication must, in comment, be so excessive, intemperate, unreasonable and abusive as to forbid any other reasonable conclusion than that defendant was actuated by express malice." If that is true in connection with a newspaper publication, so much more should it be true in connection with a letter sent to the sole business associate of the defendant.

Odgers on Libel & Slander (5th Ed.) 394 states as follows:

"But the test appears to be this. Take the facts as they appeared to the defendant's mind at the time of publication; are the terms used such as the defendant might have honestly and bona fide employed under the circumstances? If so the judge should stop the case."

The same test is adopted in Newell on Slander & Libel, Sec. 292. It is borne out by the cases. Clark v. Molyneux, 3 Q. B. D. 237, 245; Gattis v. Kilgo, 128 N. C. 402, 38 S. E. 931; Bereman v. Power Pub. Co., 93 Colo. 581, 27 P. (2d) 749, 752. And in so testing the case, the courts will not submit the language used to too strict a scrutiny. Odgers, supra, 355; Gattis v. Kilgo, supra; Strode v. Clement, 90 Va. 553, 19 S. E. 177. The fact that the language used is strong and intemperate is not alone sufficient to show malice, Newell, supra, Section 282, 292. In Noonan v. Orton, 32 Wisc. 106, a charge of arson was not deemed to show an excess of privilege, unless actual malice is alleged and proved. In Gust v. Montgomery Ward & Co., supra, the slander was as follows: "Here these shop lifters are. Give me that merchandise you stole. You stole that merchandise and hid it in your clothes. Some of you hid it in your clothes, but you can't get away with it." In Clark v. Molyneux, supra, it was told of plaintiff that he had seduced two girls; that he was expelled from the army for cheating at cards, and

had led a profligate life at Cambridge. In Montgomery Ward & Co. v. Watson, supra, plaintiff was accused of being implicated in an attempt to steal shirts, the manager of the defendant swearing and stating "what in the G— d— h— she meant in trying to steal and smuggle the company's goods, and that her statement of her action was a G— d— lie." In all these cases, it was held that malice could not be inferred from the language alone. See also similar in effect Southern Ice Co. v. Black, 136 Tenn. 391, 189 S. W. 861; Ann. Cas. 1917 E 695; McKenzie v. Burns, 149 Minn. 311, 183 N. W. 516. We must determine the point before us in the light of the rules of law above mentioned and the application thereof.

In considering whether or not the language used indicates on its face that it is malicious, or is evidence of that fact, we are not at liberty to consider merely the excerpts relating to the plaintiff, but the latter must be "read in its entirety and interpreted from its four corners." Warren v. Pulitzer, 336 Mo. 184, 78 S. W. (2d) 404, 417; 36 C. J. 1157; Wigmore on Ev. (2nd Ed.) Sec. 2119. So considering it, the fact stands out prominently that the defendant desired plaintiff's discharge for two reasons, namely, that he and Mr. Plummer might make some profits out of the hotel, and, second, that the hotel might not become a public nuisance, or place for the censure of the public. These reasons appear again and again in the letter. And defendant did not want his associate to rely upon defendant's statement, but almost begs Mr. Plummer to have an investigation made as to whether the charges contained in the letter are true. "You have confidence in McDougle" he writes, "Why don't you ask him to investigate this for you. Ask your own nephew. Ask anyone in whom you have confidence." These statements would seem to go far in showing that the defendant fervently believed in the truth of the charges

made by him. Without knowing the actual facts, "Who," in the language of Strode v. Clement, 90 Va. 544, 559, "can say that the defendant might not have honestly written the letter in question?" Who can say that in view of the fact of the patent ultimate purpose of writing the letter, defendant had an ill will against the plaintiff? In order to determine whether or not the publication went beyond the occasion therefor, we must take into consideration the end in view. Bohlinger v. Life Ins. Co., 100 Ark. 477, 140 S. W. 257, Ann. Cas. 1913 C. 613 and cases cited. We can, perhaps, see this case in clearer perspective if we suppose that the defendant had had a personal interview with Mr. Plummer. Viewing the case from defendant's standpoint, as we must under the foregoing authorities, every man would have expected him, to gain his legitimate purpose of discharge of the plaintiff, to have urged every ground and reason which he believed to exist. The fact that he wrote a letter, since he lived at Rawlins and Mr. Plummer at Cheyenne, should not change the rule. Everything mentioned against the plaintiff appertained to his qualification to conduct the hotel—a semi-public institution. We are unable to say that the use of the language, for the purpose in view, was not as consistent with bona fides as with malice. At least we are not prepared to hold, in the language of the court in Ashford v. Newspaper Co., supra, that the language of the letter is "so excessive, intemperate, unreasonable and abusive as to forbid any other reasonable conclusion than that defendant was actuated by express malice." We do not, accordingly, feel justified in disagreeing with the trial court's conclusion herein, and the judgment herein must, accordingly, be affirmed.

*Affirmed.*

RINER and KIMBALL, JJ., concur.