264 P.2d 413

BROKING

v.

PHOENIX NEWSPAPERS, Inc.

No. 5722.

Supreme Court of Arizona.

Nov. 30, 1953.

Moore & Moore, Phoenix, for appellant.

Gust, Rosenfeld, Divelbess & Robinette, Phoenix, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Maricopa County denying plaintiff's claim for damages on account of an alleged publication made concerning him, and from an order denying plaintiff's motion for a new trial. The parties will hereinafter be referred to as plaintiff and defendant as they appeared in the superior court.

The facts are that on September 14, 1951, defendant published in the Arizona Republic a picture of a dead dog chained to a post beneath which was a comment to the effect that the dog, man's best friend, had died of heat, thirst and starvation while chained to the post and that the neighbors blamed its master for its death, and that the humane officers were looking for its owner, vowing that they would "prosecute him as far as possible for the terrible cruel thing he has done," etc. Following this publication, on September 16, 17 and 18, there was published each day a letter from different citizens who had read the above article. In these letters they criticized the owner of the dog and the neighbors for permitting it to die.

Thereafter plaintiff filed this action alleging that said publication was false and defamatory and by reason thereof plaintiff had suffered actual damages in the sum of $25,000 and in addition thereto asked for punitive damages in a like amount. The defendant entered a general denial to plaintiff's complaint, and specifically denied that said publication was false. Thereafter during the trial it filed an amended answer adding paragraph 6 thereto to the effect that the article published in defendant's paper of which complaint was made was a fair report of a matter of public interest and was made by defendant in good faith without malice and with an honest belief of its truth. The amendment was filed with the permission of the court and over the objection of plaintiff. According to defendant's brief, paragraph 6 is intended as an affirmative defense of qualified privilege. The cause was tried to a jury and as above stated, verdict was rendered for defendant upon which the court ordered the entry of judgment.

In prosecuting his appeal to this court plaintiff has presented 14 assignments of error. We will consider them in the man-

ner we deem most appropriate. Assignment No. 1 is based upon denial of plaintiff's motion for judgment at the beginning of the trial for compensatory damages and that the issues be limited to the amount thereof, and as to whether plaintiff was also entitled to punitive damages upon the ground that defendant's answer did not raise any issue with reference to the liability of defendant, inasmuch as defendant admitted the publication of the article which is libelous per se and therefore presumed to be false and malicious.

 We are not in accord with this contention. Had plaintiff intended to attempt a limitation of the issues to damages he should have invoked the provisions of rules 56(a), 56(c) and 56(d), sections 21–1210, 21–1212, 21–1213, A.C.A.1939, A.C.A. Supp.1952, relating to summary judgments. Those sections provide for a judgment in plaintiff's favor as to all or any part of the issues upon which his claim is based. Before a judgment of that character may be rendered however, ten days' notice must be served upon the adverse party giving it the opportunity to meet the question raised. We believe the remedy provided for in the above rules is exclusive. This view seems to be buttressed with logic when considered in connection with rules 15(a) and 15(b), sections 21–448 and 21–449, A.C.A.1939, providing that leave to amend shall be freely given when justice requires. In the instant case defendant had the right to amend its pleadings at any time, at least, during

the course of the trial upon leave of the court if justice required and it was not an abuse of discretion to permit defendant's amendment adding paragraph 6 to its original answer after both plaintiff and defendant had presented their case in chief. The only evidence thereafter received was from a rebuttal witness presented by plaintiff.

What we said with respect to assignment No. 1 applies equally to assignment No. 2, based upon the same grounds.

 It is the law of this state that if a publication in a newspaper

"'* * * tends to bring any person into disrepute, contempt, or ridicule, or * * * to impeach his honesty, integrity, virtue or reputation,' and is false and defamatory, it constitutes a libel on him. * * *" Central Arizona Light & Power Co. v. Akers, 45 Ariz. 526, 46 P.2d 126, 131. Section 43–3501, A.C.A.1939.

and is actionable per se. It is the law in practically every jurisdiction that where any publication concerning another charges the other in substance with a crime, that such publication is actionable per se. It is further the law in this state and elsewhere that if the language charged to be libelous is unambiguous it is the function of the court to say whether it is libelous per se. If it is ambiguous or susceptible to more than one interpretation it is the province of the jury under proper instruction from the court to determine whether it is defamatory.

Central Arizona Light & Power Co. v. Akers, supra, and cases cited therein. We find no ambiguity in the language used in the publication under consideration and therefore as a matter of law hold that it is libelous per se.

We further held in the Akers case, supra, that

"* * * Every publication falling within the statutory definition of libel is actionable per se, and upon proof of publication the law presumes its falsity and that it was published with malice. * * *"

We reaffirmed this rule of law in Kinsey v. Real Detective Publishing Co., Inc., 52 Ariz. 353, 80 P.2d 964. It follows, therefore, that unless the publication in the instant case was privileged or qualifiedly privileged, the proof of publication of the article carried with it the presumption of its falsity and of malice toward the plaintiff and the burden was upon the defendant to prove both the truth of the publication and a lack of malice toward plaintiff. The defendant did not plead as an affirmative defense the truth of the publication and was therefore without any basis in its pleading for the introduction of evidence tending to establish the truth thereof. Under such circumstances the admission of evidence of truth would constitute reversible error except where the publication is privileged or qualifiedly privileged in which case the issue of truth is not material unless the publication is made with malice in fact.

In the instant case the defendant as above stated, was permitted to amend its pleadings at the close of all the evidence in chief, interposing a plea of qualified privilege. The court having ruled as a matter of law that the publication involved was qualifiedly privileged, the burden shifted to the plaintiff to show not only actual malice but also the falsity of the publication. Cooper v. Romney, 49 Mont. 119, 141 P. 289; Ashcroft v. Hammond, 197 N.Y. 488, 90 N.E. 1117; Miller Ins. Agency v. Home Fire & Marine Ins. Co., 100 Mont. 551, 51 P.2d 628; Ripps v. Herrington, 241 Ala. 209, 1 So.2d 899, 903.

In the latter case the court, in discussing this question, had this to say:

"* * * The rule raising a presumption of falsity and malice where one without occasion therefor, either for public good, or the protection of private right, defames another by a publication libelous per se, good policy demands that, when called to task therefor, the traducer be required to show the truth of his publication, or other facts acquitting himself of malicious purpose. On the other hand, where an occasion for a privileged publication is shown, such publication should be deemed in the exercise of such privilege. A presumption of falsehood should not be indulged against him, any more than a presumption of truth should be indulged against the plaintiff. In such case, no presump-

tion of falsity should be indulged and the burden of going forward is on him who actively asserts falsity in the publication."

This seems to be in accord with the weight of authority. There is no evidence in the case tending to establish malice in fact, and where there is no malice in fact even though the publication may not be true if it was published in the public interest in good faith believing it to be true, it is not libelous and no liability arises as a result of its publication. Emde v. San Joaquin County Central Labor Council, 23 Cal.2d 146, 143 P.2d 20, 150 A.L.R. 916.

It was stated in Sylvester v. Armstrong, 53 Wyo. 382, 84 P.2d 729, 733, that:

"It is the duty of the court in the first instance to determine, as a matter of law, whether or not in a case like that before us the language used is such as tends to show malice. (Citing cases), where it was said that 'whether or not there has been an abuse of the privilege, the facts otherwise not being in dispute, is a question of law for the court.' [Lehner v. Berlin Pub. Co., 209 Wis. 536, 245 N.W. 685 (Page 686.)] In Sherman v. International Publications, Inc., 214 App.Div. 437, 212 N.Y. S. 478, which involved a newspaper publication, it was said that 'as to whether or not the article in question exceeded the bounds of fair criticism and comment was a question of law, for the determination of the court.'

[245 N.W. (page 486.)] In Williams v. Standard-Exam. Pub. Co., 83 Utah 31, 27 P.2d 1, 17, the court stated that 'the question of whether a qualifiedly privileged article is written or published with malicious motive or otherwise is, generally speaking, a question of fact to be determined by the jury. However, in the absence of proof that such communication was published with actual malice, it is within the power and the duty of the court to say as a matter of law that the motive of the publication was without malice.' The last three cases do not, we think, mean to state that the jury can never pass upon the question of whether or not the privilege has been abused in a case like that before us, but merely that the court passes upon the matter in the first instance. * * *

" * * * If the manner in which words be spoken and the words themselves so transcend the bounds of the privilege that reasonable men might differ on the question as to whether or not such manner and such words indicated the presence of malice, then, in our opinion, the court should not take that question from the jury." Gust v. Montgomery Ward & Co., 229 Mo. App. 371, 80 S.W.2d 286, 291.

"In order, then, that the court may submit a case to the jury, the language used must at least tend to show malice. * * * (Citing cases.)"

340

■ The court committed error in the admission of evidence of the truth of the publication without it having been affirmatively plead, and in submitting the question of whether the publication was a qualifiedly privileged publication to the jury, there being no dispute as to the facts and circumstances of the publication. Certainly no inference of express malice can be drawn from the language itself. If the article complained of did not fall within the classification of a qualified privilege these errors would require a reversal of the case. Since, however, the publication is qualifiedly privileged it constitutes a complete defense in the absence of a showing by plaintiff that the publication was wrongfully and intentionally published with spite or ill will toward plaintiff with a desire to injure him—in other words, in the absence of a showing of malice in fact.

In view of the conclusion above reached, a further discussion of plaintiff's assignments of error would serve no useful purpose.

■ We hold (1) that the publication was of public interest communicated by one whose right it was to inform the public of the matter, if true, and that therefore, the publication was qualifiedly privileged; (2) that the burden was upon the plaintiff to prove both the falsity of the publication and that the defendant was actuated in publishing the same by malice in fact; (3) that neither of these elements having been proved by the plaintiff, the judgment of the trial court is affirmed.

Judgment affirmed.

STANFORD, C. J., LA PRADE and UDALL, JJ., and GIBBONS, Superior Court Judge, concur.

WINDES, J., not having participated in the above case, Honorable J. SMITH GIBBONS, Judge of the Superior Court of Apache County, was called to sit in his stead.