312 P.2d 150

**PHOENIX NEWSPAPERS, Inc., a corporation, Appellant,**

v.

**Jack CHOISSER, K. S. Brown, Doug Carr, J. R. Day, Jacob Klein, W. P. Lemon and John Metheany, each individually, Appellees.**

No. 6214.

Supreme Court of Arizona.
May 31, 1957.

Gust, Rosenfeld, Divelbess, & Robinette, Phoenix, for appellant.

Struckmeyer, Whitney & Perry, Phoenix, for appellees.

MURRY, Superior Judge.

This is an appeal from a judgment for damages, actual and punitive, in favor of appellees and against appellant aggregating $154,000, and from an order denying appellant's motion for judgment n.o.v. and its motion for a new trial. Appellant will be hereinafter referred to as defendant and appellees as plaintiffs.

The judgment from which the appeal is prosecuted is based upon the publication of an alleged libelous article appearing November 5, 1953, in the Arizona Republic, a daily newspaper owned and published by defendant.

On the previous evening an open forum type meeting was held by the Phoenix Junior Chamber of Commerce. All candidates for mayor and councilmen of the City of Phoenix for the 1953 city election were invited. The plaintiffs herein were running on the "Economy Ticket" opposed to what was termed the "Charter Government" ticket. Present at the meeting were also two candidates running as independents. The article appeared on page one of the Arizona Republic and in so far as here material read as follows:

"Economy-Vice Tieup Denied
Candidates Clash at Forum
    "By Jack Karie

"Opposing candidates in the forthcoming city election collided head-on last night over the issue of prostitution and gambling.

"Charter Government candidates, seeking to retain the present city administration in office, declared they feared relaxation of present controls on vice within the city if members of the Economy Ticket gained power Nov. 10.

"K. S. Brown of the Economy ticket heatedly denied any such danger exists and demanded an apology from Adam Diaz. He failed to get one.

"The Exchange was one of many as the Phoenix Junior Chamber of Commerce played host to the opposing tickets and two independents in a forum designed to define the issues in the heated campaign.

"Present were Mayor Candidate Frank G. Murphy and other Charter aspirants for city council. John F. Sullivan, Margaret B. Kober, Newton

Rosenzweig, Clarence H. Shivvers, Wesley Johnson, and Diaz.

"Jack Choisser, mayor candidate for the Economy Ticket, was backed by council hopefuls, Doug Carr, Jack Klein, John A. Metheany, and Brown.

"Independents present were Thomas E. Burns and Peter Foskin.

"Diaz set off the fireworks when he said, 'I've heard that Economy Ticket candidates have promised the city will be opened up to prostitutes and gambling if they were elected. If such a thing happens I fear for my children.'

"Brown, fighting mad, demanded an apology and asserted: 'I am for a decent clean city. I would never stand for prostitution or anything of that type if elected.'

"Brown challenged the Jaycees or anyone else to check his and other Economy ticket candidates' backgrounds.

\*  \*  \*  \*  \*  \*

"Sullivan added fuel to the fires when he claimed that the same gang who formerly bossed the city hall was supporting the opposition.

'What Is This Economy Ticket talking about, the economy of the citizens of Phoenix or the economy of the bosses?' Sullivan asked. 'Prostitutes ran wild when we were elected to office four years ago and the city was operating at a loss of $300,000 annually.' "

On the following day the plaintiffs sued the defendant claiming the publication was false and misleading and libelous per se in that it charged the plaintiffs with conspiring to bring about the establishment of vice conditions in Phoenix, and relaxing the enforcement of the state and city laws against prostitution and other vice conditions, and that the article was published maliciously with the intent to injure the plaintiffs in their professional business and political standing.

Uncontradicted testimony at the trial shows that Adam Diaz in his talk before the meeting stated:

"There are rumors that some of the opposition and their supporters have. made promises that if they are elected the town will be opened up. I have four children, including three wonderful daughters, and I certainly hope they will be able to grow up in the clean wholesome community we now enjoy. I fear for my children and for the children of all other Phoenix residents if there is a return to the type of government we had before 1950."

Whereas, the article complained of stated:

"Diaz set off the fireworks when he said 'I've heard that Economy Ticket candidates have promised the city will

be opened up to prostitutes and gambling if they are elected. If such a thing happens I fear for my children.'"

The publication further stated:

"Charter Government candidates, seeking to retain the present city administration in office, declared they feared relaxation of present controls on vice within the city if members on the Economy Ticket gained power Nov. 10."

In addition to the above, many editorials were put in evidence showing the stand that the defendant took on the election favoring the Charter group. The plaintiffs claimed that the article was not true, was misleading, and was maliciously published.

In its appeal the defendant has presented thirteen assignments of error, all of which are based upon the giving of instructions over the objection of defendant, or the refusal to give instructions requested by defendant. We will refer to only those necessary for determination of the case. The first question thus raised deals with the proposition: Was the publication libelous per se or per quod?

■ In seeking the answer to the above question the entire article must be considered as a whole. Schy v. Hearst Pub. Co., 7 Cir., 205 F.2d 750; Mortensen v. Los Angeles Examiner, 112 Cal.App. 194, 296 P. 927. This is true not only with reference to its exact language but in accordance with its sense and meaning under all the circumstances surrounding its publication. Kinsey v. Real Detective Pub. Co., 52 Ariz. 353, 80 P.2d 964; Central Arizona Light & Power Co. v. Akers, 45 Ariz. 526, 46 P.2d 126. What meaning was conveyed to those who read the article in question?

We believe it proper to observe here that the article appearing in the Arizona Republic of which complaint is made, is a fair interpretation of the language used by candidate Diaz when he said that "there are rumors that some of the opposition [Economy Ticket] and their supporters have made promises that if they are elected the town will be opened up * * *." The statement that a city will be opened up immediately suggests to the mind of the ordinary person that "prostitution and gambling" will exist without restraint in such city as they constitute the major vices of any city. Plaintiff K. S. Brown of the Economy Ticket so construed it and stated he "would never stand for prostitution or anything of that type if elected." It was he who first injected into the debate any specific reference to prostitution.

■ In Arizona it is the law that if a publication tends to bring any person into disrepute, contempt, or ridicule or—to impeach his honesty, integrity, virtue or reputation, and is false and defamatory, it constitutes a libel on him. Broking v. Phoenix Newspapers, 76 Ariz. 334, 264 P.2d 413,

39 A.L.R.2d 1382; Central Arizona Light & Power Co. v. Akers, supra; A.R.S. § 13–351.

In the case at hand it might be well to repeat a portion of the article in question at this time:

> "Diaz set off the fireworks when he said, 'I've heard that Economy Ticket candidates have promised the city will be opened up to prostitutes and gambling if they were elected. If such a thing happens I fear for my children.'"

It is without doubt that any meaning attached to the above article, in light of what we have heretofore said, would tend to bring the candidates on the Economy Ticket into disrepute, contempt, and ridicule. It would tend to impeach their honesty, integrity and reputation, and constitutes libel per se. Therefore, the publication of the article being admitted, the law presumes its falsity, and that it was published with malice, unless it is found to be a qualified privileged publication.

■ It is our view that the learned trial court was correct in its ruling that the article was libelous per se. "It is further the law in this state and elsewhere that if the language charged to be libelous is unambiguous it is the function of the court to say whether it is libelous per se." Broking v. Phoenix Newspapers, supra [76 Ariz. 334, 264 P.2d 415]. In the instant case it is not necessary to go beyond the publication complained of.

The next question presented to the court by defendant's assignments of error deals with the proposition of qualified privilege. Was the article complained of covered by the qualified privilege rule? It is the contention of the defendant that:

(1) A public meeting at which candidates for public office speak is a privileged occasion and a newspaper report of what transpired at the meeting is qualifiedly privileged.

(2) A statement published in good faith concerning a candidate for public office is qualifiedly privileged even though untrue.

(3) Once a qualified privilege is shown to exist, then plaintiffs in order to recover must prove both falsity of the publication, and that the publication was made with actual malice.

■ It is the occasion for the publication rather than the language thereof which gives rise to the privilege, and the privilege attaches in spite of the character of the publication itself, and continues until properly rebutted. Fortney v. Stephan, 237 Mich. 603, 213 N.W. 172; Merriam v. Star-Chronicle Pub. Co., 335 Mo. 937, 74 S.W.2d 592; Madill v. Currie, 168 Mich. 546, 134 N.W. 1004.

In the instant case the article was written as a report on a meeting held by the

Junior Chamber of Commerce. All candidates for mayor and councilmen for the city of Phoenix were invited. The candidates who attended were asked to give a statement on their own behalf, which they did. There can be no doubt that the publication in question was of public interest and it was communicated by one whose right it was to inform the public of such matters.

There was a dispute as to whether the publication quoted in substance what was said, but none whatsoever concerning the basic facts and circumstances of the publication or the occasion for said publication.

■ We think the rule to be as stated in the case of Broking v. Phoenix Newspapers, supra, that, where an occasion for a privileged communication is shown, such publication should be deemed in the exercise of such privilege. The burden then shifts to the plaintiff to prove the falsity of such publication and that the defendant was actuated in publishing the same by malice in fact.

■ It follows therefore that the publication was qualifiedly privileged and the lower court should have so held as a matter of law. It was reversible error for the court to refuse to so instruct the jury. Being qualifiedly privileged the burden was upon the plaintiffs to prove both the falsity of the article and that actual malice, i. e.,

malice in fact, prompted its publication by the defendant. Broking v. Phoenix Newspapers, supra.

■ Since it is incumbent upon the plaintiffs to prove actual malice in order to secure a judgment, we have searched the record but have been unable to find sufficient evidence to go to the jury on the question. As we stated in the Broking v. Phoenix Newspapers case, supra,

" * * * the question of whether a qualifiedly privileged article is written or published with malicious motive or otherwise is, generally speaking, a question of fact to be determined by the jury. However, in the absence of proof that such communication was published with actual malice, it is within the power and the duty of the court to say as a matter of law that the motive of the publication was without malice. * * *"

See, Williams v. Standard-Examiner Pub. Co., 83 Utah 31, 27 P.2d 1, 17.

Plaintiffs contend that there was ample evidence in the record of malice on the part of the defendant as shown by the defendant's bias and prejudice against the plaintiffs, its peculiar interest in the election, and the other articles and editorials written of and concerning the plaintiffs, and the attitude of the officials of the defendant corporation having control of its policy. But, the only evidence offered by

the plaintiffs concerning malice are the editorials and one news item, all of which carry a qualified privilege.

Malice cannot be inferred from an article published on a privileged occasion alone. When privileged statements are offered to show malice, none of them are admissible unless some independent proof of malice other than such privileged statements are first offered. Connor v. Timothy, 43 Ariz. 517, 33 P.2d 293; Melcher v. Beeler, 48 Colo. 233, 110 P. 181.

There is no question that the articles and editorials here involved showed a desire on the part of the defendant to defeat the plaintiffs for election. But, that is not evidence of such malice as will destroy the privilege. Defendant is in no different position than any other citizen, and had an absolute right to oppose any candidate for public office, and to persuade others to join them in such opposition. The malice which plaintiffs must establish is not legal malice or malice at law, but it must be actual malice, malice in fact, express malice. The refusal of the trial judge in the instant case to instruct the jury distinguishing between malice in law and malice in fact, and that, malice in fact had to be shown to entitle plaintiff to recover, constituted reversible error. As a matter of law we find no malice in fact from the record.

There have been cited several other assignments of error but since the above has been determinative of the issue it is not necessary to discuss them.

Since the element of malice in fact has not been proved by the plaintiffs the action must fail.

Judgment reversed with directions to enter judgment for defendant.

UDALL, C. J., and WINDES, PHELPS and LA PRADE, JJ., concur.

STRUCKMEYER, J., having disqualified himself, Honorable PORTER MURRY, Judge, Superior Court, Greenlee County, was called to sit in his stead.