Jack L. **MICKELSON**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 19685.

United States Court of Appeals
Ninth Circuit.

June 4, 1965.

Rehearing Denied Aug. 17, 1965.

Robert F. Ewing, Spokane, Wash., for appellant.

Frank R. Freeman, U. S. Atty., Robt. M. Sweeney, Asst. U. S. Atty., Spokane, Wash., for appellee.

Before HAMLEY and JERTBERG, Circuit Judges, and MATHES, District Judge.

JERTBERG, Circuit Judge.

Appellant, Jack L. Mickelson, and his father, John L. Mickelson, were charged in a seven count indictment with violations of 18 U.S.C. § 1005 and 18 U.S.C. § 656. Both were named in Counts III, VI, and VII. The father, alone, was named in Counts I and IV. The appellant, alone, in Counts II and V.

The father pleaded guilty to all counts in which he was named, prior to trial. On motion of the Government, Counts II and III were dismissed, as to the appellant, prior to trial. Counts V, VI and VII upon which the appellant went to trial before a jury charged violations of 18 U.S.C. § 656. The jury returned verdicts of "not guilty" as to Counts V and VII, and a "guilty" verdict as to the offense charged in Count VI. Count VI in substance charged that on or about the 17th day of January, 1962, the father who was President and Chairman of the Board, and appellant who was Vice-President and a member of the Board of Directors of the Farmington State Bank, organized under the laws of the State of Washington, and insured under the provisions of the Federal Deposit Insurance Act, did, with intent to injure and defraud said bank, knowingly, wilfully and unlawfully misapply the sum of approximately $1,168.22 which monies were the property of said bank and entrusted to its care and custody, in that both of said officers caused to be paid from the funds of said bank to the Inland Company, a Washington corporation, for the use and benefit of said corporation, and of said defendants as officers and stockholders of said corporation, the said sum of $1,168.-22 as a discount on the purchase price at said bank of the vendor's equity in certain contracts for the sale of real estate, thereby unlawfully and knowingly causing a depletion of funds and credits of said bank in violation of Section 656, Title 18 USCA.[1]

Appellant was committed to the custody of the Attorney General for imprisonment for a period of eighteen months,

1. "§ 656. Theft, embezzlement, or misapplication by bank officer or employee
  "Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, * * * embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; * * *."

with eligibility for parole upon serving a term of ninety days.

Appellant specifies as error that the District Court erred:

1. In denying appellant's motion for acquittal at the close of the Government's case;

2. In permitting evidence of subsequent transactions outside the indictment to be used without giving a limiting instruction;

3. In giving an improper, inaccurate and misleading instruction;

4. In denying appellant's motion for acquittal at the close of all of the evidence on the ground that the evidence was insufficient to show that appellant "willfully misapplied" any of the monies of the bank; and

5. In denying appellant's trial counsel sufficient time to prepare for trial.

■ We shall first consider specifications 1 and 4. In doing so, we must view the evidence in the light most favorable to sustain the verdict of the jury. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Enriquez v. United States, 338 F.2d 165 (9th Cir. 1964).

In the main appellant's defense was that he performed his major duties as an officer of the bank, including the transaction described in Count VI, at the direction of his father, with whom he was in contact by telephone, and that he "was nothing but an errand boy, acting at the absolute direction and instruction of his father." He further contended that the Government's evidence failed to show that he had the power or authority to direct the application of discounts to the Inland Company, and that the evidence will support no other conclusion than that only his father possessed that power or authority. He further testified that Mr. Cornelius, the attorney who handled the closing of the sale transactions described in Count VI, advised him that it was acceptable and proper practice to pay the discounts on the contracts to Inland Company instead of to the bank. Mr. Cornelius' testimony differs substantially from appellant's account of the conversation. He testified that when asked, he advised appellant that he was not a bank attorney and did not know if it was all right to pay the money to the Inland Company.

We believe there is here substantial evidence that appellant did possess the authority, on his own behalf, to direct the application of the discounts. It appears from the record that appellant: (1) was the Vice-President and a director of the Bank; (2) was the senior employee present during banking hours inasmuch as his father was regularly employed in another bank approximately 50 miles distant; (3) issued the cashier's checks for the purchase of the contracts and delivered them to the closing attorney; (4) directed the closing attorney to make certain of the discounts payable to the Inland Company; and (5) drew checks on the Inland Company account and used the funds for his own benefit. While there is evidence that appellant often sought advice from his father, there is no evidence that the authority of appellant's position as Vice-President was in any way limited or restricted, by his father or otherwise.

■ In view of the foregoing, we cannot agree with appellant's contention that he was powerless to act on his own behalf but, of necessity, must have acted solely at the direction of his father. The question, as it relates to the actual commission of the acts charged in the indictment, as well as to intent, was for the jury and therefore was properly submitted to it for its determination. See Cape v. United States, 283 F.2d 430, 433, 434 (9th Cir. 1960).

We next consider specifications of error 2 and 3 which arise out of the admission into evidence of acts similar to those charged in the indictment but which took place subsequent to the offenses charged in the indictment. In this regard, immediately prior to the introduction of such evidence, the District Court instructed the jury as follows:

"THE COURT: Yes, I am permitting certain transactions to be

shown in evidence that are not charged in the indictment, and I caution the jury that they are not introduced for the purpose of showing the guilt or the innocence of the defendant as to the charges, but solely for the purpose of shedding such light as they may upon whether the defendant did or did not have intent, as will be described to you at the time you are given the instructions, and as you will be advised at that time, the specific intent to defraud is a necessary element of this crime.

"These transactions, as I understand it, will be shown, some of which will be outside those charged in the indictment, and they are to be considered here only for the purpose of bearing upon the intent of the defendant."

At the conclusion of the trial, the court instructed the jury as to other offenses as follows:

### "INSTRUCTION NO. 17

"The fact that the accused may have committed an offense at some time is not any proof whatever that at a later time the accused committed the offense charged in the indictment, even though both offenses be of a like nature. Evidence as to an alleged *earlier* offense of a like nature may not therefore be considered in determining whether the accused did the acts charged in the indictment. Nor may such evidence be considered for any other purpose, unless the jury first find that other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the acts charged in the indictment.

"If the jury should find beyond a reasonable doubt from the other evidence in the case that the accused did the acts charged in the indictment, then the jury may consider evidence as to an alleged *earlier* offense, in determining the state of mind or intent with which the accused did the acts charged in the indictment. And where all the elements of alleged *earlier* offense of a like nature are established by evidence which is clear and conclusive, the jury may draw therefrom the inference that in doing the acts charged in the indictment, the accused acted willfully and with specific intent, and not because of mistake or inadvertence or other innocent reason." (Emphasis supplied.)

Appellant urges that it was error for the court to refer, in its later instructions, to "earlier" offenses rather than subsequent ones, i. e., those to which evidence was admitted. It is argued that in doing so the jury may have believed that the court's earlier admonition applied only to "earlier" offenses, and that they may therefore have considered the evidence of subsequent offenses outside the limits of appellant's intent, which, of course, would be violative of the general rule that proof of distinct, independent offenses is inadmissible.

There has not here been a compliance with Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.,[2] which requires that objections to the instructions be made before the jury retires to consider its verdict. No objection on this ground

---

2. "Rule 30. Instructions

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

was at any time made before the District Court.

 In light of the fact that a limiting instruction was made at the time of the reception of the evidence and the negligible likelihood of any prejudicial effects the latter instruction may have had upon the jury, we decline to notice the matter as plain error.[3] See, Baker v. United States, 310 F.2d 924 (9th Cir. 1962).

Appellant last argues that he was denied a fair trial in that, because of the complexity of the issues presented by the indictment, trial counsel should have been allowed more than the time allotted to prepare for trial. The facts in this regard are these: Appellant was indicted on May 17, 1963, and was represented by retained counsel who subsequently withdrew from the case. Twenty days prior to the trial which began on June 8, 1964, an attorney was appointed to represent appellant. Because of his inexperience in trial and criminal matters, a second attorney was appointed a few days later to assist him. Of their representation the District Court said:

"Before we recess, I would like to say, counsel, that I appreciate very much your efforts, Mr. Diana and Mr. St. John, in this case. It shows a great amount of preparation. I feel that the matter was very ably and capably presented."

 A continuance was not formally requested. See, Hess v. United States, 254 F.2d 578 (8th Cir. 1958). Moreover, appellant's assertion, without more, that the issues of the case are complex, is insufficient to show denial of a fair trial. The affidavit of Mr. St. John (one of appellant's trial attorneys) which adverts to the facts surrounding his appointment, alludes to nothing, following the appointment of a co-counsel, which would indicate that the time remaining for preparation of appellant's defense was insuffi-

cient in any way or caused prejudice to the appellant. See, De Roche v. United States, 337 F.2d 606 (9th Cir. 1964); Eubanks v. United States, 336 F.2d 269 (9th Cir. 1964). We see no error.

The judgment of conviction is affirmed.

3. "Rule 52. Harmless Error and Plain Error
\*       \*       \*       \*       \*
"(b) Plain error. Plain errors or defects affecting substantial rights may be

noticed although they were not brought to the attention of the court."