Herbert B. PETERSON, Appellant,

v.

The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a corporation, Appellee.

No. 19415.

United States Court of Appeals Ninth Circuit.

Aug. 21, 1965.

4. Barnard-Curtis Co. v. United States ex rel. D. W. Falls Constr. Co., 10 Cir., 244 F.2d 565, 567.

Lou Ashe, Belli, Ashe & Gerry, San Francisco, Cal., Herbert B. Finn, Phoenix, Ariz., for appellant.

Akolt, Shepherd & Dick, Denver, Colo., Fennemore, Craig, Allen & McClennen, Phoenix, Ariz., Gilbert M. Westa, Denver, Colo., for appellee.

Before BARNES, Circuit Judge, ORR, Senior Circuit Judge, and MATHES, Senior District Judge.

MATHES, Senior District Judge.

This action was originally commenced in the Superior Court of Maricopa County, Arizona, by appellant and eight other former fellow employees of appellee. Each sued for damages for alleged defamation contained in letters of discharge sent them by appellee as their employer.

The action was removed to the District Court upon the petition of appellee asserting diversity of citizenship. [28 U.S.C. §§ 1332, 1441.] The parties then stipulated that all nine plaintiffs might try their respective causes of action separately; and the attorneys for plaintiffs thereafter elected to try appellant's cause of action first. The jury found against him, and this appeal is from the judgment entered upon that adverse verdict.

Inasmuch as the letter of discharge, dated June 20, 1957, contains not only the defamatory matter complained of, but also the grounds asserted by appellee for appellant's discharge, it is set forth in full:

"Dear Mr. Peterson:

"This is to notify you that effective June 8, 1957, your services with the Mountain States Telephone and Telegraph Company have been permanently terminated.

"The reasons for termination of your services are as follows:

"On June 8, 1957, evidence was reviewed with you which indicated that you failed to turn over to the company certain monies which you removed from the upper housings of certain pay station telephones. After review of this evidence you were given an opportunity to make any statement that you desired with respect to your position on the matter.

"I have carefully reviewed all the evidence together with all statements which you made in your own behalf. I find that you knew that monies removed from the upper housings of pay station telephones were to be turned over to the company; that you failed to turn over to the company certain monies which you removed from the upper housings of certain pay station telephones and that you offered no satisfactory explanation concerning the disposition of these monies.

"Under the provisions of the Company's Fidelity Bond covering the Company's employees, the circumstances outlined above render it necessary that you be removed from coverage under the bond. The Company, of course, has no alternative but to report the matter to the Bonding Company."

It is conceded that this letter, the contents of which the District Judge ruled were "libelous per se", was published by appellee in Phoenix, Arizona, at least to the stenographer who typed it and to the clerk who filed appellee's office copy of it.

■ It is our duty of course to accept as true all evidence tending to sustain the jury's verdict. [Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Mickelson v. United States, 346 F.2d 952 (9th Cir. 1965).] The evidence is uncontradicted that it had not been the practice of appellee to send a letter of discharge upon terminat-

ing an employee, but here the Arizona Director of the Communications Workers of America, appellant's union, requested that all charges in connection with anticipated discharges for cause against appellant and the eight others be made in writing. It is undisputed also that the union was acting throughout as appellant's agent, and that even the decision to sue appellee was made by the District Director of the union.

The evidence shows that appellant received the letter of discharge by registered mail on or about June 23, 1957, and that this action was filed five days thereafter, on June 28, 1957. The evidence further shows that, with appellant's consent, news of the letter of discharge and of the ensuing suit for damages received wide publicity in a Phoenix newspaper.

In defense of the action, appellee pleaded by way of confession and avoidance that the letter of discharge was qualifiedly privileged because of the employer-employee relationship, and was written without malice. Appellee also pleaded the affirmative defense of truth.

■ Before proceeding to consider appellant's specifications of error, it is well to recall that in this action, where Federal jurisdiction rests entirely upon diversity of citizenship, the District Court was called upon to apply the substantive law of Arizona. As the Court has said, "in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." [Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079 (1945); see: Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Bernhardt v. Polygraphic Co. of America, 350 U.S. 198, 76 S.Ct 273, 100 L.Ed. 199 (1956).]

■■ For grounds of appeal, appellant specifies certain alleged errors in the charge to the jury, to each of which appellant made timely objection as required by Rule 51 of the Rules of Civil Procedure. He first asserts that the instructions given "erroneously assumed that because the publication was qualifiedly privileged, the burden was upon appellant to prove both malice and untruthfulness". As to this, the District Court instructed the jury, *inter alia:*

"Has plaintiff proved, by a preponderance of the evidence, that the libel contained in said letter of discharge was false? If you find that plaintiff has failed to carry that burden, then your deliberations would end and you would return a verdict for the defendant."

The law of Arizona as to burden of proof is "substantive" in character and, as such, governed the trial in the District Court. [See: Dick v. New York Life Ins. Co., 359 U.S. 437, 446, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959); Palmer v. Hoffman, 318 U.S. 109, 116–119, 63 S.Ct. 477, 87 L.Ed. 645 (1943); Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 212, 60 S.Ct. 201, 84 L.Ed. 196 (1939); cf. Guaranty Trust Co. v. York, supra, 326 U.S. at 108, 65 S.Ct. 1464.] And it appears to be settled Arizona law that where, as here, defamatory matter is shown to be qualifiedly privileged, the burden of proving both falsity and malice rests upon the plaintiff. [See: Phoenix Newspapers, Inc. v. Choisser, 82 Ariz. 271, 312 P.2d 150 (1957); Broking v. Phoenix Newspapers, Inc., 76 Ariz. 334, 264 P.2d 413, 39 A.L.R.2d 1382 (1953).]

The rule has been stated clearly and unequivocally by the Supreme Court of Arizona that "where an occasion for a privileged communication is shown, such publication should be deemed in the exercise of such privilege. The burden then shifts to the plaintiff to prove the falsity of such publication and that the defendant was actuated in publishing the same by malice in fact." [Phoenix Newspapers, Inc. v. Choisser, supra, 82 Ariz. at 277, 312 P.2d at 154.]

■ Appellant next contends that the instructions given "on the issue of malice were improper in that they restricted the

question of malice to ill-will or evil intent." The term "malice", appellant insists, "also includes publications made negligently or with a gross disregard for the rights of others". The jury were instructed: "Simply stated, a publication is malicious when it is inspired by ill-will or evil intent."

When appellant made timely objection to omission of the possible elements of gross negligence and recklessness, the learned trial judge explained his purpose as follows:

> " * * * [I] might say for the record here that I don't feel that there is any evidence in this case of gross negligence or reckless disregard that is sufficient to submit to the jury."

The record discloses beyond question that appellant tried his case and submitted it to the jury on the theory that, because of his union activities the year before in an "important strike" against appellee, and because of appellant's "militant leadership" as president of the Phoenix local of the union and as chairman of the local strike committee, appellee set out to "frame" him, with the result that appellant was falsely accused of failure "to turn over to the company certain monies * * * removed from * * * certain pay telephones".

According to appellant's theory of his case, therefore, ill will and evil intent were necessarily the operative ingredients of any malice on the part of appellee. To have included any concept of negligence, however gross, or of reckless disregard of appellant's rights, however wanton, could only have served to becloud the issue as to the existence of malice; for appellant's case, as presented and argued to the jury, simply left no room for any suggestion that the libelous statements in the June 20th letter were the product of anything less than knowing and purposeful personal spite and ill will toward appellant.

█ █ It is not the role of the Court's charge to confuse the jury with abstract propositions of law. Instructions to the jury should always be adjusted to opposing contentions as to the facts shown by the evidence in the case. [Martin v. Globe Indemnity Company, 345 F.2d 1, 3 (5th Cir. 1965); see Indianapolis etc. R. R. Co. v. Horst, 93 U.S. (3 Otto.) 291, 295, 23 L.Ed. 898 (1876).] Indeed, we have held that it is error to instruct the jury on an issue not properly a part of the case. [Brown v. Chapman, 304 F.2d 149 (9th Cir. 1962).]

Accordingly, we hold that the definition of malice, as given to the jury following the evidence and the argument in the case at bar, was sufficiently comprehensive, and that omission of the possible elements of gross negligence and recklessness did not affect any "substantial rights" of appellant within the meaning of Rule 61 of the Rules of Civil Procedure.

█ Appellant's final contention is that the last paragraph of the June 20th letter is "the most damning part of the libel". This paragraph states:

> "Under the provisions of the Company's Fidelity Bond governing the Company's employees, the circumstances outlined above render it necessary that you be removed from coverage under the bond. The Company, of course, has no alternative but to report this matter to the bonding company."

Appellant urges that, in view of these statements about the fidelity bond, the jury were erroneously instructed as follows:

> "[I]f you find that plaintiff has failed to prove by a preponderance of the evidence that he properly accounted for pay station monies which he took from the pay stations on the occasions mentioned, your verdict must be in favor of the defendant even though you might find that the letter of discharge was not exactly correct in every detail."

The District Court's view was that the gist or "sting" of the defamatory letter was the accusation that appellant failed to account for certain "monies which he took from the pay stations".

Appellant's contention, as put in his opening brief, is that the last paragraph of the letter contains "a charge that he is not bondable, to wit, that he is dishonest, that he has committed a 'fraudulent or dishonest act' as the language of the bond provides." To state the argument is to answer it; for the "sting" of the entire letter unmistakably is that appellant is dishonest and unworthy of trust as to money, and the entire letter was submitted to the jury upon that view of it. Moreover, appellant's argument on this point must rest not only upon the statements in the letter, but also upon "the language of the bond"; and the record is searched in vain for any indication that any person to whom the letter in question was published ever saw "the language of the bond". Appellant's final contention must therefore fall, if for no other reason than because it is grounded upon facts extrinsic to the libelous publication, namely, "the language of the bond". [See: Ilitzky v. Goodman, 57 Ariz. 216, 112 P.2d 860 (1941); Henn, "Libel-by-Extrinsic-Fact", 47 Cornell L.Q. 14 (1961).]

There is no merit then to be found in appellant's appeal. Under full and fair and, when taken as a whole, eminently correct instructions, the jury considered appellant's claim and, obviously disbelieving him, returned a verdict against him. For the reasons already stated, the judgment entered on that verdict must be affirmed.

But there is much to be said for another ground advanced for affirmance: appellee's contention that the defamatory letter was absolutely privileged because appellant consented to the publication. The uncontradicted evidence in the record before us is that union officials, who were admittedly appellant's agents with unquestioned authority, consented to—indeed invited and sought—the libelous publication. An interesting surrounding circumstance is the speed with which the preparation of the complaint and the filing of this action followed the mailing of the letter to appellant.

That publications made with the consent of the person defamed are absolutely privileged appears to be well settled. [See: Restatement, Torts, § 583 (1938); Harper and James, Torts, § 5.17, n. 1 at 105 (1956); Prosser, Torts, § 95 (2nd ed. 1955); 33 Am.Jur. Libel and Slander, § 93, n. 1–2 at 105 (1941); 53 C.J.S. Libel and Slander § 80, n. 7 at 129 (1948).] Although there appears to be no Arizona decision or legislative enactment on this point, the Supreme Court of Arizona has stated on more than one occasion that "when not bound by previous decision or legislative enactment" the State courts "would follow the Restatement of Law". [Waddell v. White, 56 Ariz. 525, 527, 109 P.2d 843, 844 (1941); accord, Small v. Ellis, 90 Ariz. 194, 198–199, 367 P.2d 234, 236 (1961).]

We may assume, then, that if the defamatory letter were in fact consented to by appellant or his authorized agent, the publication was absolutely privileged. However, since it does not appear that the defense of absolute privilege was presented to the District Court, we do not decide here whether it would rule this case.

Affirmed.